(116 So. 161)

**KENNEDY et al. v. PARKS.** (4 Div. 337.)

Supreme Court of Alabama. March 22, 1928.

**1. Executors and administrators ☞214, 261—Funeral expenses are lawful and preferred charge against estate (Code 1923, § 5822).**

Funeral expenses are not only lawful charge against all the estate of deceased subject to debt, but a first preferred charge under Code 1923, § 5822.

**2. Executors and administrators ☞215—Cost of tombstone is proper charge against estate as part of funeral expenses.**

Cost of tombstone suited to condition of estate is regarded as proper charge against estate of decedent as part of funeral expenses.

**3. Witnesses ☞159(13)—Administrator, son of deceased, held competent to testify to his claim against estate for reimbursement of amount paid on deceased's doctor bill.**

Administrator, who was son of deceased and who sought reimbursement out of estate of money paid on decedent's doctor bill, held competent to testify to such claim, where he had resided with, and cared for, deceased, and knew of professional services, since testimony did not relate to any transaction between witness and decedent.

**4. Executors and administrators ☞341—Evidence held to support finding that personalty was insufficient to pay debts at time of petition for sale of lands.**

In proceeding by administrator for sale of lands of estate for payment of debts, evidence held sufficient to support finding that personalty of estate was insufficient to pay debts at time petition was filed.

**5. Executors and administrators ☞507(1)—Final adjudication as to rents chargeable to administrator should come on final settlement.**

Final adjudication as to rents chargeable to administrator should come on final settlement of estate.

**6. Executors and administrators ☞131—Administrator, who was tenant in common with deceased, cannot occupy land without paying rent.**

Although occupancy by one tenant in common without an ouster of his cotenant does not ordinarily subject occupying tenant to accounting for rents, administrator who was tenant in common with deceased cannot continue to occupy land without paying rent, since, as administrator, he occupies trust relation, and has duty to derive income from estate he represents.

**7. Executors and administrators ☞330—Heirs contesting petition to sell lands of deceased to pay debts held entitled to have adjoining tracts sold together, though sale of one would bring enough to pay debts.**

Heirs of deceased contesting petition to sell lands for payment of debts held entitled to have adjoining tracts sold together, where such sale would be more advantageous, notwithstanding that sale of one would bring enough to pay debts.

**8. Executors and administrators ☞360—Court is vendor in sale of lands to pay debts of deceased, and may direct administrator in conduct of his trust.**

In sale of lands of estate of deceased to pay debts, court is vendor, and has power to direct administrator in conduct of his trust.

Appeal from Circuit Court, Pike County; W. L. Parks, Judge.

Petition in equity by A. D. Parks, as administrator of the estate of Maggie W. Parks, deceased, to sell lands for payment of debts, contested by Mary Parks Kennedy and others. From a decree granting the prayer of the petition, contestants appeal. Reversed and remanded.

A. G. Seay, of Troy, for appellants.

A deficiency in the assets of an estate caused by maladministration or devastavit will not justify a sale of land to pay debts. Speers v. Banks, 114 Ala. 323, 21 So. 834. It must be shown that it would be to the interest of the estate to sell the property or a portion thereof. Johnson v. Porterfield, 150 Ala. 532, 43 So. 228. An administrator is liable for rent of lands, and is liable for neglect of duty if he fails to exercise this right for the benefit of creditors. Clark v. Knox, 70 Ala. 607, 45 Am. Rep. 93; Griffin v. Bland, 43 Ala. 542. Where there is an accounting pending, the sale should be delayed until after adjudication upon the account. 24 C. J. 554. An administrator who takes possession of and uses the land of decedent is chargeable with its rental

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

value. Henderson v. Simmons, 33 Ala. 291, 70 Am. Dec. 590. When the administrator claims credit for an account against the estate, paid by him, he must prove it by the same degree of evidence the creditors would ·have been compelled to produce. Jenks v. ·Terrell, 73 Ala. 238; Pearson v. Darrington, 32 Ala. 227; Harwood v. Pearson, 60 Ala. 410. Debts for which the lands. of an estate may be sold must exist at the time of death of decedent. 24 C. J. 549; Beadle v. Steele, 86 Ala. 413, 5 So. 169; Owens v. Childs, 58 Ala. 113. The burden is on the administrator to show existence of debts chargeable on the lands and insufficiency of personal assets. Garrett v. Garrett, 64 Ala. 263; Taylor v. Crook, 136 Ala. 354, 34 So. 905, 96 Am. St. Rep. 26; Bolen v. Hoven, 143 Ala. 652, 39 So. 379. Allowance to administrator of credit for cost of a tombstone depends upon the value of the estate and desire of the deceased. Bendall v. Bendall, 24 Ala. 295, · 60 Am. Dec. 469. No person having a pecuniary interest in the result of a suit is allowed to testify against the party to whom his interest is opposed as to any transaction with a deceased person whose estate is interested in the result of the proceeding. Code 1923, § 7721.

Wilkerson & Brannen, of Troy, for appellee.

Where there are debts owing by the decedent, and the personal property of the estate is insufficient for payment thereof, the personal representative has the right to take possession of the lands for purposes of administration and sell such portion of the lands as may be necessary to pay debts. Code 1923, § 5857. Proof of debts not required to be made by disinterested witnesses. Poole v. Daughdrill, 129 Ala. 208, 30 So. 579. Burial expenses devolving on friends and relations are regarded as money paid on request of the personal representative, and the law implies promise on his part to repay it. Gayle v. Johnston, 72 Ala. 254, 47 Am. Rep. 405. Such debts are debts of the estate for which lands may be sold. McCullough v. Wise, 57 Ala. 623. Tombstone is proper charge against assets in hands of administrator. Hatchett v. Curbow, 59 Ala. 516; Phillips v. First Nat. Bank, 208 Ala. 591, 94 So. 801. The rights of an assignee or purchaser of the share of the distributee are to be asserted upon final settlement. Spears v. Banks, 125 Ala. 227, 27 So. 979; Simmons v. Knight, 35 Ala. 105; Vincent v. Daniel, 59 Ala. 602.

BOULDIN, J. A. D. Parks, as administrator of the estate of Maggie W. Parks, deceased, filed his petition in the equity court, where the administration was pending, for .the sale of lands for the payment of debts. The proceeding was contested by the heirs.

From a decree granting the petition, this appeal is prosecuted.

The necessity to sell the lands of the estate for the payment of debt is the controverted question of fact to which evidence is mainly directed. This inquiry goes to the amount of debt, and the existence of personal assets sufficient to meet the debts.

Dealing first with the question of indebtedness, the items set up in the evidence are these:

| | |
|---|---|
| (1) Funeral expenses, three items, for casket, material for burial vault, and labor, aggregating | $169 00 |
| (2) Monument or tombstone for the grave of decedent | 170 00 |
| (3) Account of Dr. T. D. McKnight for services as physician to decedent | 137 00 |
| Total (principal) | $476 00 |

[1] This indebtedness, except the last item, accrued, of course, after the death of decedent. Appellant takes the broad position that lands of an estate cannot be sold for debts incurred after decedent's death. Funeral expenses are not only a lawful charge against the estate, all the estate subject to debt, but a first preferred charge under the statute, Code, § 5822.

[2] Since Hatchett v. Curbow, 59 Ala. 516, the cost of a tombstone suited to the condition of the estate has been held and regarded a proper charge as part of the burial expenses. That it is purchased and set up after the burial, not as an immediate and necessary expense of interment, can make no difference in principle, except that it must be purchased by the administrator. An outsider could not furnish it at the expense of the estate. As against heirs at law who succeed by inheritance to an estate, this charge is incident to an appropriate interment of the body of the decedent. Whether lands of an estate may be sold for this purpose alone we need not here decide.

[3] The doctor's bill, it appears, was paid by the administrator, and he now asks reimbursement out of the estate. The competency of the administrator to testify to this claim as justly due is the objection raised as to this item. It appears the administrator resided with, and cared for, his mother, the decedent, to the time of her death. His knowledge of the professional services of her physician does not appear to be questioned. The testimony does not relate to any transaction between the witness and decedent in which, the mouth of one being closed by death, the law closes the mouth of the other. Being a coheir of her estate, the interest of the witness in the first instance was with that of his sisters. We hold him a competent witness.

Neither the existence of these debts nor the propriety of the outlays are controverted in the evidence. They will all be treated as lawful debts in passing upon the necessity

for a sale of the lands. We consider only the questions raised.

[4] In the matter of personal property left by decedent at the time of her death, appellants have failed to sustain their contention. The weight of the evidence, which need not be reviewed, sustains the administrator's contention that the live stock, chickens, piano, and most of the house furnishings were his individual property. The few articles left by decedent were of rather nominal value for purposes of sale.

The chief controversy turns upon the rents, or value of use and occupation of the lands of decedent for which the administrator should account.

Decedent, Maggie Parks, and her son, Albert, the administrator, resided together on these lands, a small farm of some 85 acres, at the time of her death in the autumn of 1923. Albert became administrator in January, 1924, and has continued to reside upon and cultivate the lands in connection with an adjoining farm of his own containing some hundreds of acres.

Some twenty-five witnesses are examined at much length as to value of the rents. Witnesses for appellants value the rents from $400 to $500 per annum. They estimate or assume the acreage in cultivation to be 60 to 65 acres. We consider the better evidence—that shown by the actual survey, 5.40 acres in pasture and 47 acres in cultivation, less space occupied by improvements, and some 15 feet of public road running alongside the place its full length, nearly one-half mile.

[5] Appellee's witnesses value the rents at $100 to $150 per annum. They place their estimates generally on 40 acres in cultivation, less than shown by the survey. We purposely refrain from any finding of the true value of rents which should be charged to the administrator. Our only concern is whether these, with other assets in his hands, avoid the necessity to sell the lands. The final adjudication as to rents chargeable to the administrator should come on a final settlement of the estate.

[6] One question, however, we consider in connection with our decision here. The administrator claims that as to the south 40 of this land (less 3 acres owned by another) he is a tenant in common, owning two-ninths interest, and the estate of decedent seven-ninths. The chain of title, whose ramifications we do not discuss, shows the title is so held. We do not think any evidence of adverse possession by decedent, or of estoppel, such as would divest the title of appellee as cotenant, sufficiently appears. It is without dispute that throughout the period of their joint ownership both have occupied the premises, and Albert has had the actual control and management of this land in connection with his own farm, selling and disposing of all products, without accounting, and with no contract of rental. The mother's support and maintenance for the use of her lands seems to have been the situation by common consent.

Appellee claims that, by reason of this cotenancy, he is not accountable for the use of the common property since he became administrator. We cannot sustain this view. It is a recognized doctrine that occupancy by one tenant in common without an ouster of his cotenant does not ordinarily subject the occupying tenant to an accounting for rents. But here Albert is the administrator occupying a trust relation, and, as such, has the duty to derive an income for the estate he represents. He cannot claim the use of this property in his own interest and avoid his liability for rents on the interest of his decedent.

Now, coming to the rents to be treated as assets to pay debts as an answer to the petition, we note that only one year's rent, that for 1924, had accrued when this petition was filed. The rents for succeeding years, pending this suit, will be a matter of inquiry on final settlement. But this cause must be determined by the status of assets and liabilities when the petition was filed. Appellants are not in position to say the administrator should have awaited the accumulation of rents sufficient to pay the debts and save the land, because they were taking steps to force a final settlement, having already removed the administration into the court of equity.

The court being the vendor, and having in hand the matter of administering the trust for the benefit of the beneficiaries, might, in a proper case, we think, suspend and dismiss proceedings for the sale of lands, if it appears assets have come in before decree which would render the sale unnecessary. Here, heavy costs of litigation have been accruing pending the accumulation of rents. The amount of such costs we know not. The taxation of them is largely in the discretion of the lower court. We are not in position to say the rents accrued to the date of the decree will meet all the debts and charges against the estate.

Appellants adduce evidence of cutting and selling some pine trees on the lands by the administrator pending his administration, and ask that the proceeds be held as assets for payment of debts. The evidence in this regard is quite conflicting. We need only say that such sum, if any, derived from such timber in excess of the value of betterments put on the place by the administrator, added to one year's rent, does not indicate a sufficient fund to meet the debts and expenses of administration accrued to the time the petition was filed. We therefore hold the court was without error in his finding that the personalty was insufficient to pay the debts of the estate.

[7] But another question was raised by the heirs, evidence taken thereon, and in effect denied by the decree rendered.

This little farm consists of two adjoining

40's (less some 3 acres sold from the southwestern corner), and a narrow strip between this 80 acres and the public highway. By survey, the total acreage is 84.40 acres. The petition asks a sale of the north 40 and adjoining strip some 44 to 45 acres, leaving the south 40 unsold. The heirs allege and adduce evidence tending to show it would be to the interest of the estate to sell it as a whole.

The place has one good seven room farmhouse, with barn, and two tenant houses. All these are on the north tract. The main dwelling would cost some $2,000 to $3,000, and is a suitable main residence for the large farm embracing this. land and Albert's land adjoining.

Only a one-horse crop is in cultivation on this upper tract. The improvements can add very little to the value of this parcel, except to an adjoining owner. On a sale of the whole, the land and improvements will be better balanced. A sale in parcels, under the conditions, would, we think, tend to depress the price of each parcel, beside the expense incident to two sales.

Albert Parks, the administrator, with a large adjoining farm, is in a position of natural advantage upon a sale in parcels. There was no effort made on examination of witnesses for the administrator to controvert the evidence offered by the heirs tending to show the interest of the estate requires a sale of the farm as a whole. Appellee seems to think there is no duty to sell more than is necessary to pay the debts, and the administrator has full discretion in the matter.

No arbitrary rule should be laid down touching the sale of all, or a part of, the lands for payment of debts. It is sufficient to say the administration is one trust; it is a unity in the ends sought. The interest of the beneficiaries controls throughout. It is clearly a duty to conserve the general interests of the estate in selling lands, although the sale is rendered necessary to pay debts.

[8] Without further comment, we are of opinion there was error to reverse in rendering the decree for the sale of one parcel only. The court is the vendor, and has power to direct the administrator in the conduct of his trust. He should be required to amend the petition so as to provide for the sale of the interest of the decedent in the entire tract. That Albert owns an undivided interest in the lower 40 does not alter the situation. When sold, if purchased by another, it will be owned by two tenants in common instead of many, and both owners will have adjoining lands. Nothing indicates they cannot readily make partition in kind.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.