139 So. 106

## GRAYSON et al. v. GOOLSBY et al.
### 6 Div. 927.

Supreme Court of Alabama.

Jan. 14, 1932.

Fort, Beddow & Ray and G. Ernest Jones, all of Birmingham, for appellees.

Murphy, Hanna, Woodall & Lindbergh, R. DuPont Thompson, and Walter S. Smith, all of Birmingham, for appellants.

### GARDNER, J.

The original bill was for the enforcement of a materialman's lien in the erection of a new house on a vacant city lot owned by one Goolsby, and upon which vacant lot there was a first mortgage to the United States Bond & Mortgage Company in the sum of $1,800, the mortgage reciting that it was "given to secure a construction loan on the real estate."

All lienholders, mortgagees, and those claiming any interest in the property were made parties, and by the decree their respective interests, liens, and priorities were fixed. As to this feature of the decree no complaint is made, and details in reference thereto may be here omitted.

The evidence discloses, and the chancellor so found, that the lot with the dwelling thereon was worth less than the mortgage debt; that the lot alone, with the house removed, was of the value of $900; and that, on account of the manner of its construction (not here necessary to detail), the dwelling house would be practically without value if sold separate and apart from the land. The chancellor was of the opinion, however, that he was restricted in the form of the decree by the language of section 8833, Code 1923, and the decision of this court in Central Lumber Co. v. Jacks, 222 Ala. 475, 132 So. 721, and, contrary to his better judgment, ordered a sale of the dwelling separate and apart from that of the lot, expressing his views in the following language: "The court is of the opinion that the dwelling house constructed upon said land, as to which said mechanic liens are superior to the said mortgage liens, is of such nature, character and construction that said dwelling house would

be practically without value if sold separate and apart from the land, but that said dwelling house is of substantial market value, to-wit of the value of $1000.00 as a part of and as situated upon the land; and that to order a sale of the land and a sale of said dwelling house separately would be to practically destroy the value of the said mechanic liens or without any corresponding, just or equitable advantage to the mortgagees; and that an equitable result may be obtained without detriment to the mortgagees by decreeing a sale of said land and dwelling house as an entirety, and by decreeing to the first mortgagee a first lien upon the proceeds of the sale to the extent of the value of the land as the said value would be if there were no dwelling house thereon. But the court is of the opinion that under the decisions of the Supreme Court of Alabama, particularly the decision of the Court in the case of Central Lumber Company v. Tom Jacks, that it has no authority to order a sale of the land and the dwelling house thereon as an entirety, but is required to order the land and the dwelling house thereon sold separately."

But we think the Jacks Case, supra, is to be differentiated from the instant case upon most material points. There the mortgages had been foreclosed, and the lienholders were seeking the enforcement of their liens against the purchasers at the foreclosure sales, who were, as they had the right to do, standing upon their perfected legal title. Here, the mortgage had not been foreclosed and the mortgagee made its answer a cross-bill and sought the affirmative relief of a foreclosure of its mortgage. There is nothing in the provision of section 8833 of the Code, nor in the language of the opinion in the Jacks Case, indicating any purpose to abrogate the equitable maxim, as old as equity jurisdiction itself, that "he who seeks equity must do equity," which in its broadest sense has been regarded as the foundation of all equity. 1 Pom. Eq. Jur. § 785. This maxim has been given frequent application by this court (Interstate Trust & B. Co. v. Nat. Stockyards Nat. Bank, 200 Ala. 424, 76 So. 356, 357; Davis v. Elba Bank & Trust Co., 216 Ala. 632, 114 So. 211; Cross v. Bank of Ensley, 203 Ala. 561, 84 So. 267; Grider v. American Freehold L. & M. Co., 99 Ala. 281, 12 So. 775, 42 Am. St. Rep. 58), and is illustrated by numerous decisions found in the notes to 1 Pom. Eq. Jur. (4th Ed.) §§ 385, 396, inclusive. And the doctrine of marshaling of securities is said to rest upon the principle of this equitable maxim. 1 Pom. Eq. Jur. § 396. See also, in this connection, Farmers' S. & B. & L. Ass'n v. Kent, 117 Ala. 624, 23 So. 757; Vines v. Wilcutt, 212 Ala. 150, 102 So. 29, 35 A. L. R. 1301.

In discussing this maxim, this court in Interstate Trust & B. Co. v. Nat. Stockyards

Nat. Bank, supra, pointed out that the power of a court of equity in the enforcement thereof is not one conferred by statute, nor is it exercised for the purpose of enforcing any contractual right, but is an invention of a court of chancery for regulating its own procedure, in the application of which the court exercises a discretion as conceived to be in the interest of equity and justice; the court further saying: "It is a maxim as old as equity jurisdiction itself that 'he who seeks equity must do equity,' and it has been held that in its broadest sense it will be regarded as the foundation of all equity, since courts do not protect equitable rights unless such rights are in pursuance of settled juridical notions of morality, based upon conscience and good faith. * * * The complainant * * * seeking the aid of a court of equity to clear its title, must offer to do equity. If it is unwilling to do this, then it must stand upon its rights at law. Equity will lend no aid." And, as expressed in section 385 of 1 Pom. Eq. Jur., speaking of this equitable maxim: "It says, in effect, that the court will give the plaintiff the relief to which he is entitled, only upon condition that he has given, or consents to give, the defendant such corresponding rights as he also may be entitled to in respect of the subject matter of the suit."

Though not expressly so stated, yet we think it apparent that the ruling of the federal court in Continental & Commercial Trust & Savings Bank v. North Platte Valley Irr. Co. (C. C. A.) 219 F. 438 (reported on second appeal in [C. C. A.] 237 F. 188, and a case here directly in point favorable to appellants' contention), was rested upon a consideration of this equitable principle. And illustrative of the manner in which equity exercises its power to so mold its decree in the interest of equal justice and fair play are the following of our own cases: Becker Roofing Co. v. Wysinger, 220 Ala. 276, 124 So. 858; Magnolia Land Co. v. Malone Investment Co., 202 Ala. 157, 79 So. 641; City of Birmingham v. Emond (Ala. Sup.) 134 So. 622;[1] Kennedy v. Parks, 217 Ala. 323, 116 So. 161; Jackson v. Farley, 212 Ala. 594, 103 So. 882.

Counsel for the mortgagee insists that the rights of the lienholders may be enforced only by a resort to the method prescribed in section 8833 of the Code, that is, a sale of the house separate from the lot and a removal thereof within a reasonable time thereafter, and a decree otherwise ordering a sale of the house and lot as an entirety with the proportionate adjustment of the liens and claims of the parties would, without its consent, violate its contract rights. The argument, however, overlooks the fact that the mortgagee became the actor by the cross-bill seeking affirmative relief, and in so doing

[1] 223 Ala. 20.

must be held to have recognized the equitable principle that relief would only be granted upon condition that it consents to give the other parties such corresponding rights as they may be entitled to in respect of the subject matter of the suit. These lienholders have a lien on the house superior to the mortgage. Under the statute they may have it sold and moved, but under the peculiar circumstances here disclosed, so to do, would amount to a destruction of their liens to all practical purposes.

The parties have had their day in court, and fully represented at the hearing of the proof. There is no complaint of the finding of the court that the vacant lot is of the value of $900. It would seem inequitable, therefore, that the lienholders should be required to suffer a practical loss of their security without any corresponding gain to the mortgagee. When the mortgagee thus seeks affirmative relief, it cannot prescribe the manner in which the decree is to be molded, but submits to the jurisdiction of the court, which has as one of its foundation stones the maxim, "He who seeks equity, must do equity." Applying that maxim here, we think it may be said that the mortgagee has consented that the corresponding rights of the lienholders should likewise be protected, if without detriment to itself, and in harmony with equitable principles.

We therefore conclude that the chancellor was not restricted to the exact provisions of section 8833 of the Code, and that the Jacks Case, supra, is inapplicable here. As previously noted, the case of Continental & Commercial T. & S. Bank v. North Platte Val. Irr. Co. (C. C. A.) 219 F. 438, 449, is in principle here directly in point, and concerned a statute in all material respects corresponding with our own. Upon the question here considered, the following disposition of the cause meets our own approval: "The question of whether the property shall be sold as an entirety is not the same as the question arising as to the extent of the mechanics' liens. It is apparent that if the gravity system was sold to one purchaser and the hydroelectric system to another, the owner of the gravity system would have the power to render the electric system worthless; therefore it should be sold as a whole, and the proceeds of the sale, after paying the necessary costs and expenses of administering the receivership and other prior charges, should be divided among the bondholders and the mechanics' lien claimants in the same proportion as the value of the property upon which the lien claimants have a superior lien, considered as a part of the whole system, bears to the total value of the mortgaged property, diminished by the value of the property subject to the superior lien."

To the end that the cause may be disposed of in accordance with the foregoing statement from the Continental & Commercial T. & S. Bank Case, supra, and in harmony with the views herein expressed, the decree will be reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.

