148 So. 125

**WOOD LUMBER CO. v. GREATHOUSE et al.**

6 Div. 128.

Supreme Court of Alabama.

March 30, 1933.

Rehearing Denied May 25, 1933.

London, Yancey & Brower, J. K. Jackson, and Al. G. Rives, all of Birmingham, for appellant.

B. F. Smith, of Birmingham, for appellees.

THOMAS, Justice.

This bill was against J. O. Greathouse, J. I. Harden, and C. J. Donald to enforce a materialman's lien against land and the improvements thereon.

It is alleged that the materials were furnished to Greathouse and used in making the improvements on the land; that a verified statement of the lien was duly filed; and that complainant "has been informed and believes that respondents, J. I. Harden and C. J. Donald claim to be the owners of some right, title or interest in the property described in paragraph three of this bill of complaint."

The prayer was to make J. O. Greathouse, J. I. Harden, and C. J. Donald parties respondent, and prays that they each be required to plead, etc., and that upon final hearing it be decreed "that * * * complainant may have a judgment against the respondent, J. O. Greathouse, for the amount of said indebtedness, and interest thereon, and that in the event the respondents, J. I. Harden and C. J. Donald have any interest in, or lien or encumbrance upon the property referred to in paragraph three of this bill of complaint, your Honor will settle the priorities of equities as between complainant and respondents, J. I. Harden and C. J. Donald, and that your Honor will order a sale of said land and the improvements thereon in satisfaction of complainant's lien if the said claim is not fully paid and discharged within such time as may be fixed by your Honor."

The answer of Harden and Donald was that they entered into a lease sale contract with Greathouse; that he failed to comply therewith, was never in possession of the property, and owned no interest therein by virtue of said lease sale contract, or by any other instrument or contract, oral or written at the time the bill was filed; that Greathouse abandoned said contract soon after it was entered into; that they, as lessors and owners, had to take charge and complete the same.

Respondents Harden and Donald further plead and answer as follows:

"J. I. Harden and C. J. Donald further state in answer to said paragraph four of the bill of complaint, that they nor their agents or any person authorized to represent them, ever solicited complainant for building material of any character or description, to be wrought into a building located on the property described in the bill of complaint. That they never at any time had any contract, either oral or written, with complainant to furnish said respondents or J. O. Greathouse, or any other person, lumber or building material of any character to be wrought into a building or improvements located on the property described in paragraph three of the complaint. That said respondents, J. I. Harden and C. J. Donald never received notice in writing or orally from complainant or any one representing complainant, advising said respondents that complainant was about to furnish the said J. O. Greathouse or any other person, building

material of any character to be wrought into improvements on the premises described in paragraph three of the bill of complaint. That said respondents did not know and were not advised either by complainant or respondent J. O. Greathouse, or any other person or persons, that complainant was or had furnished building material to be wrought into improvements on said premises, until the filing of the bill of complaint in this cause; that said respondents never at any time before the filing of this bill of complaint or since, acknowledged indebtedness to complainant for the matters and things set out in its bill of complaint, nor have said respondents agreed to become responsible or pay said complainant for property alleged to have been furnished the said J. O. Greathouse as stated in paragraph four of the complaint.

"* * * That the said J. O. Greathouse or someone acting for him, did soon after the execution of the lease sale contract above referred to, commence the construction of a residence or building on said Lot Twenty-five (25), Block Four (4), Steiner's Addition, but that said building was soon abandoned, and that the lease sale contract entered into between the parties above referred to, was also abandoned thereafter. That during the period the work on said premises above referred to was in progress, a large quantity of material was placed on said premises by parties unknown to respondents, and that soon thereafter, before said material was wrought into improvements on said premises, it was moved or hauled away either by the said J. O. Greathouse or by the parties selling or furnishing the said material, and that but little of it was wrought into the building commenced as above described.

"* * * That after the said J. O. Greathouse abandoned his contract with respondents, J. I. Harden and C. J. Donald and after abandoning the building commenced on the premises above described, respondents took over the property, as they had a right to do under their contract, the terms of which not having been complied with by the said Greathouse, and the said Greathouse having abandoned said contract, said respondents completed the building commenced on said premises, paying for the lumber and material necessary to complete said building."

The lien sworn to and filed on April 20, 1929, named as owner and proprietor of the property, "J. O. Greathouse, and/or J. I. Harden and C. J. Donald"; the lien claimed was of and from January 21, 1929, "for supplies sold to J. O. Greathouse and * * * used * * * in the construction and erection of a building on the property described," amounting to $968.16, and was claimed as to "both the buildings and improvements thereon and the said land."

Recent cases are collected in Richardson Lumber Co. v. Howell, 219 Ala. 328, 122 So. 343; Schwab v. Estes Lumber Co., 225 Ala. 452, 143 So. 829; Byrum Hardware Co. v. Jenkins Building Supply Co., ante, p. 448, 147 So. 411, and authorities cited.

Mr. Wood testified for his corporation that he was its official with knowledge of the facts; that his company furnished to Greathouse a quantity of the material for this and two or more other houses; that construction originally started on three other lots on 41st street and then moved to three other lots, namely 5, 25, and 26, located in Belview Heights; that is, there were "three lots to start with," and, because of a mistake here immaterial, they moved the construction and some of the accumulated material to the lot described in the bill (lot 25) and lots 5 and 26; that his corporation moved as much of the material as they were told by Greathouse to move, and such material "that was not already fabricated"; that the house being erected on lot 25 of said map or subdivision was a "brick veneer"; that he did not furnish all the brick that went into that house; that he did not know whether his company furnished them all or not, but it furnished quite a few; it furnished more than enough to build the house. Witness was further asked, and answered, as follows:

"Q. On this particular house? A. I have no way of segregating what went on this particular house.

"Q. Have you invoices for the material that was furnished on all of the lots? A. Yes.

"Q. Did you have delivery tickets? A. Yes, sir.

"Q. Do you have them with you now? A. Yes.

"Q. Where are they? A. Right here (indicating).

"Q. These are the delivery tickets? A. Yes, sir."

The delivery tickets were excluded from evidence because witness did not know what went into the instant house. The contractor lessee rendered this evidence material by his more specific statement that witness said he knew "what went into the two lots"— that house.

The last invoice was of date of December 21, 1929, and due, according to the contract with Greathouse, on January 21, 1929. The plaintiff's agent as a witness did not show that specific material went into the house on the lot in question. However, the lessee, Greathouse, testified that he received its brick, flooring, angle iron, sand, slag, etc., from the complainant; that the price charged was reasonable, and that he had not paid therefor; that the amount due therefor was $968.16, and some went to the house on this lot. The cross-examination of the witness showed doubt as to which of the three houses certain of the material was used in; that it

was used "in one of the three jobs * * * couldn't say which one * * * can't tell you which items went into which house"; that they furnished material to the six different lots; that the three houses erected by him on lots 5, 25, and 26 were finished about or a short time after November 20, 1928, to Greathouse.

Harden testified that no material was delivered by Wood's Company after December 12, 1928, and that he paid out the large sums necessary to complete the house, and that neither he nor Donald ever gave a deed to the house to Greathouse; that he had no agreement with the Wood Lumber Company to furnish material; that they gave him no notice or bill for material, but "merely asked" witness "a time or two when we were going to have the case settled" after this suit was filed. Witness, however, stated the price of the lot was $1,750; that he and the joint owner advanced, on labor, $1,005, paid for flooring, $130; and paid material bills to the amount of $1,403.10; paid for insurance $67.-12 and for installing gas $35; that he thought the property was worth about $6,-500 when the house was being built. The evidence of Harden and Donald indicated that the house on lot 25 was worth $3,300 or $4,-000.

■ Complainant's right to a personal judgment against Greathouse is well established by the evidence. The rule of our cases is that, under the statutes (sections 8832, 8848, 8853, Code), upon proof of an indebtedness against a contractor for material furnished him and used in a building, the plaintiff is entitled to a personal judgment against such contractor, and a lien, if there is an unpaid balance due by the owner to such contractor. Redd Bros. v. Todd, 209 Ala. 56, 95 So. 276; Lavergne v. Evans Bros. Construction Co., 166 Ala. 289, 52 So. 318; McGeever v. Harris & Sons, 148 Ala. 503, 41 So. 930; Sullivan Timber Co. v. Brushagel, 111 Ala. 114, 20 So. 498; Copeland v. Dixie Lumber Company, 4 Ala. App. 230, 57 So. 124. In the denial of a personal judgment against the lessee Greathouse, for the amount of said indebtedness, interest, and costs, there was error.

To advert to the testimony of defendant Harden, that witness further stated that the house in question was located on "the West 40.38 feet of Lot 25, in Block 4," in the subdivision or addition indicated; that, as stated, it was "a brick veneer house"; the title to the lot was in him and "Mr. Donald jointly"; that they have not conveyed it to Greathouse; that the value of the house and lot is $6,000, or was $6,500 when the house was built; that he and Donald put into it several items to complete the house, approximately $2,629.60; that the lot was contracted for sale to Greathouse at $1,753; that the house

was worth "about $4,000.00." The court then asked, and witness answered, as follows:

"The Court: You and Donald have got a $1400.00 value on that building, taking the $2600.00 off you have got in the building from the $4000.00 which you say it is worth, and that gives you a value in the building in excess of the money that you have got in it. Why can't you pay off the Wood Lumber Company for their material out of that $1400.00?

"A. Judge, I don't know. In fact, I don't owe Wood Lumber Company (a) thing, and I don't know whether their material went in there or not, or somewhere else, and I don't know how much Wood Lumber Company furnished them or whether Wood Lumber Company furnished them anything.

"The Court: Mr. Greathouse makes a very clear statement about it. He gives you the number of bricks that went into the house.

"A. He gives you one number and other people over there claim they furnished it all."

And on cross-examination:

"Q. You say you were unaware of Wood Lumber Company furnishing material in the erection of the three houses until after all of them had been completed? A. No, sir.

"Q. When did you find it out? A. When he received the check."

■ It is declared that a lien may be established against the improvements alone and without reference to the land. Schwab v. Estes Lumber Co., 225 Ala. 452, 143 So. 829, and authorities; Turner v. Robbins, 78 Ala. 592; Becker Roofing Co. v. Wysinger, 220 Ala. 276, 278, 124 So. 858; Ingram v. Howard, 221 Ala. 328, 128 So. 893; Wimberly v. Mayberry & Co., 94 Ala. 240, 10 So. 157, 14 L. R. A. 305; Birmingham Building & Loan Association v. Boggs, 116 Ala. 587, 22 So. 852, 67 Am. St. Rep. 147; Salter v. Goldberg, 150 Ala. 511, 43 So. 571; First Ave. C. & L. Co. v. McWilson, 182 Ala. 276, 280, 62 So. 531; Central Lumber Co. v. Jacks, 222 Ala. 475, 132 So. 721; Pilcher v. E. R. Porter Co., 208 Ala. 202. 94 So. 72; Grimsley v. First Ave. Coal & Lumber Co., 217 Ala. 159, 115 So. 90; Byrum Hardware Co. v. Jenkins Building Supply Co., ante, p. 448, 147 So. 411, and authorities there cited.

In Grayson v. Goolsby, 224 Ala. 75, 139 So. 106, it was held that under the statute a sale of the land and the building thereon, as a whole, may be made, where its nature required, to preserve and award the respective interests under a decree so molded and safeguarding priorities. Byrum Hardware Co. v. Jenkins Building Supply Co., supra. And in Becker Roofing Co. v. Jones, 225 Ala. 638, 144 So. 865, it was held that the mechanic and materialman's lien is "superior to anterior incumbrances" to the extent of the enhanced

market value by reason of the added repairs. Wimberly v. Mayberry & Co., 94 Ala. 240, 10 So. 157, 14 L. R. A. 305.

■ The right of the lessor to discharge a lien and prevent the sale and removal of the improvements is taken care of by the statute (section 8835, Code), and recognized by our decisions. Taylor v. McGill, 205 Ala. 458, 88 So. 564; Eufaula Water Company v. Addyston Pipe & Steel Co., 89 Ala. 552, 8 So. 25; Town of Camden v. Fairbanks, Morse & Co., 204 Ala. 112, 86 So. 8.

■ The testimony of the lessee of Harden and Donald, who made the lease sale contract with Greathouse, and who was the contractor in chief, personally supervising the construction work, indicated that certain of the materials, the amount and their market price or cost, for which the lien was sought to be established and declared, went into this veneered house. Evidence on this point was relevant and material in this proceeding, to establish such lien against the lessors subsequently assuming possession and completing the building. The delivery or dray tickets were relevant and material with the other evidence adduced. Redd Bros. v. Todd, 209 Ala. 58, 95 So. 276. The evidence of Harden, in reply to the court's observation, "Mr. Greathouse makes a very clear statement about it. He gives you the number of bricks that went into the house," to which Harden replied, "He gives you one number and other people over there claim they furnished it all," is not conclusive against the right to establish the lien to the extent of the amount of the enhanced value as to the brick and other materials shown to have been furnished and used in that specific improvement. If, as stated by Harden, "the other people over there," so claiming to have furnished materials to the houses in question, had been brought in, if so desired, they would be bound by a decree molded to protect the owners of the land, the lessor, and the several materialmen contributing under the statute to such improvement. Such is the power and jurisdiction of a court of equity. Such, no doubt, was the purpose of the consolidation of the two suits for materials employed in this house. Richardson Lumber Co. v. Howell, 219 Ala. 328, 122 So. 343; Schwab v. Estes Lumber Co., 225 Ala. 452, 143 So. 829.

This case is within the rule of College Court Realty Co. v. Letcher Lumber Co., 201 Ala. 362, 363, 78 So. 218, 219, saying:

"While it is true that the record does not show a contract specific in terms as to how much lumber was to be used on any particular lot or house, it does show that all the lumber was to be used, and was used on several lots of defendant's, and went into several houses thereon; and the evidence, we hold, sufficiently shows how much was used in each particular building, to meet the requirements of our statute as heretofore construed by us. Here the lumber or material purchased was to be used in three buildings to be erected on a piece of property or place known as 'College Court.' All the materials did go into the three houses; and the evidence, showing the amount and value of the lumber entering into each house, was sufficient to support the lien judgment. The case was tried by the court without a jury, and we agree with the trial court in its findings.

"The amount and value of the material that went into each house was ascertained, and was sufficiently specified in the claims filed in the probate court; and it does not defeat the lien that this amount or value going into each house was not ascertained at the time the sale of the lumber was agreed upon."

■ The burden in such a case is upon the materialman to establish his claim and lien on the land and house, or on the improvement alone. United States Fidelity & Guaranty Co. v. Benson Hardware Co., 222 Ala. 429, 437, 132 So. 622; Richardson Lumber Co. v. Howell, supra; College Court Realty Co. v. Letcher Lumber Co., supra; Redd Bros. v. Todd, supra.

■ The owners, Harden and Donald, should be permitted to bid at such sale the amount of their superior claims indicated by their testimony, and merely be required to pay into the registry the sum of the costs. Complainant should be required to bid at such sale, paying the amount of the superior claims as indicated, and use as a part of his bid the amount of his claim.

We are of opinion that the cause should be retried as we have indicated. The decree of the circuit court is, therefore, reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.