154 So. 591

## BAKER SAND & GRAVEL CO. et al. v. ROGERS PLUMBING & HEATING CO. et al.

### 6 Div. 406.

Supreme Court of Alabama.
March 29, 1934.

Rehearing Denied May 24, 1934.

W. A. Rose and Bradley, Baldwin, All &
White, all of Birmingham, and Wright, War-
ren & Searcy, T. B. Ward, J. M. Ward, and
Foster, Rice & Foster, all of Tuscaloosa, for
appellants.

Foster, Rice & Foster, of Tuscaloosa, for appellee Rogers Plumbing & Heating Co.

Miller, Graham & Wingo, and John S. Foster, all of Birmingham, for appellee Mohns.

BOULDIN, Justice.

The question of first importance is that of priority between a mortgagee of real estate and materialmen furnishing materials to an original contractor for the erection of a building thereon. The mortgage was executed and recorded prior to the beginning of work on the building.

■ In such case by express statute, the mortgage has the superior lien on the land, but as to the building liens under the mechanic's lien law are superior to all other liens, mortgages, or incumbrances. Code, § 8833.

In this case the mortgagee claims priority as to the building.

The material facts touching this issue may be briefly summarized thus:

The owner of a lot or parcel of land in the city of Tuscaloosa entered into a contract with an original contractor to erect an apartment house thereon. The contractor undertook to furnish all the labor and material.

The contract price was the actual cost of labor and material, plus a fee of $4,000 to the contractor, total cost not to exceed $45,000.

Payments were to be made to the contractor on estimates of the architect as the work progressed.

To begin the enterprise the owner negotiated a construction loan of $17,500, executing a mortgage therefor.

The contractor, in aid of the procurement of such loan, entered into a separate instrument in writing with the mortgagee, stipulating that in consideration of such loan to the owner, the contractor subordinated his lien on the proposed building to that of such mortgage.

It appears this loan was intended to be temporary in character, it being contemplated the owner would later negotiate a large loan for needed funds to complete the enterprise, out of which this temporary loan should be paid. Accordingly, it was stipulated in the construction contract between owner and contractor that his lien on the building be subordinated to the final mortgage to the extent of $17,500. This final loan was never obtained, leading to the embarrassment presented in the record.

The contract stipulated that the cost "shall be paid by the owner to the contractor, in current funds, and only upon certificate of the architect, as follows: Four Thousand Dollars ($4,000.00) to be paid to the party of the first part on architect certificates issued along as work progresses. As soon as permanent loan has been placed by the party of the second part then the party of the second part is to pay to party of the first part 85% of all labor and material then due and is to continue to pay 85% of all labor and material every two weeks as work progresses."

It was further stipulated: "If at any time there shall be evidence of any lien or claim for which, if established, the owner of the said premises might become liable, and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify them against such lien or claim."

This latter provision obviously refers to contemplated liens in favor of laborers and materialmen.

By a supplemental contract of same date as the original, and part of the same transaction, it was stipulated:

"1. Owner elected to furnish all necessary brick to be delivered at building site at Tuscaloosa, Ala., and also approximately 10,000 pieces of reenforced tile which material is to be used by the contractor. Owner further agree to furnish receipted bills for the purchase of this material.

"2. A warranty deed conveying the property subject to the construction loan of $17,500.00 is to be executed by V. C. Foster and placed in escrow with the Mortgage Co. of Alabama, upon the following terms and conditions:

"(a) If within thirty (30) days from the completion of the building, the contractor has not been paid all sums due on said contract (with the exception of $4000.00 construction fee), then the contractor shall have the election to request escrow agent to deliver said deed, in which event the delivery and acceptance of said deed shall be a full and complete discharge of the rights of the party arising out of said contract. Provided that if within 30 days the owner shall submit evidence of payment of all sums due contractor other than $4000.00 then escrow agent shall return deed to owner."

The contractor proceeded with the erection of the building, incurring large bills with numerous concerns for materials to be used and which were used in the building. These bills are unpaid. These materialmen took all needful steps to perfect their liens, and filed separate bills to enforce the same. These

suits were duly consolidated, and decrees rendered for the several amounts due, and adjudging liens therefor.

The court ascertained and decreed an unpaid balance due from the owner to the contractor.

It appearing the building could not be removed from the lot without tearing it down, and virtually destroying its value, the court decreed a sale of the property as a whole, and decreed the priorities of the several lienholders in the proceeds.

The value of the parcel of land, without the building, was ascertained and decreed, and the mortgage above mentioned decreed a first lien on the proceeds of sale to that amount.

It was further decreed that the mortgage lien on the building was superior to materialmen's liens who had dealt with and furnished materials to the contractor; and, accordingly, it was decreed that the balance of the mortgage debt be given priority of payment out of the proceeds of the building, subordinating the decrees for materials.

■ The trial court, in his ruling, expressed the view that liens of such materialmen are by way of subrogation to the lien of the contractor, and his contract with the mortgagee subordinating his lien to that of the mortgage also subordinated those of the materialmen.

The decree is not based on any finding of actual notice to materialmen of the subordination agreement between mortgagee and contractor. Materialmen here argue the evidence shows a want of such notice, and we do not understand this to be controverted.

Such agreement was recorded long after work was begun on the building. We have no statute in Alabama providing for the record of construction contracts as in some states. The only record of mechanics'. liens provided by law is a record of statements of claims of lienors to be filed and recorded in the office of the judge of probate under Code, § 8836. The record of such subordination agreement, even if prior to the beginning of work on the building, cannot operate. as constructive notice.

Dealing with the question of materialmen's liens as derivative in character, and by way of subrogation to the contractor's lien, the statutes themselves, as well as our decisions, fully negative any such concept.

The statutes create a direct, separate, and independent lien in favor of each class of persons named, each to be kept alive and enforced for himself in his own right. No failure of the contractor to follow up or establish his lien, nor any estoppel which would prevent him from so doing, can defeat other lienors.

Indeed, if contractor and materialmen all perfect and enforce their liens, the contractor is subordinated to and stands in the pay line behind the materialmen, taking only the unpaid balance, if any, due from the owner after liens of laborers and materialmen of the contractor have been paid. Code, § 8854.

Materialmen who furnish material under direct contract with the owner and so become original contractors, or who, before furnishing material to the contractor, give notice to the owner under Code, § 8832, and the owner fails to give notice that he will not be responsible, as provided by the same section, stand on a different footing.

■ That our statutes give a direct lien to materialmen, not merely by way of subrogation to that of the contractor, is fully settled. Sections 8832, 8836, 8840, 8841, 8854, 8858 of the Code of 1923; Ex parte Schmidt & Smith, 62 Ala. 252; Le Grand v. Hubbard, 216 Ala. 164, 112 So. 826; Standard Sanitary Mfg. Co. v. Aird, 221 Ala. 520, 129 So. 285; David Lupton's Sons Const. Co. v. Hugger Bros. Const. Co., 227 Ala. 25, 148 So. 610; McDonald Stone Co. v. Stern & Marx, 142 Ala. 506, 38 So. 643; Eggleston v. Birmingham Purchasing Co. (C. C. A.) 15 F.(2d) 529; Central Trust Co. v. Richmond, N. I. & B. R. Co. (C. C. A.) 68 F. 90, 41 L. R. A. 458.

But a kindred question, presented forcibly in argument here, expressive, we take it, of the view adopted by the trial court, is that of the right of the owner and contractor to stipulate in advance against the creation of any liens on the property, and the binding effect of such stipulations on materialmen furnishing material to the contractor.

Pretermitting for the present any question of the relation of the contract between owner and contractor to the separate agreement between contractor and the mortgagee, and proceeding on the idea that the contract between owner and contractor sufficiently discloses a purpose to subordinate all liens to that of this mortgage, we approach the direct question to this effect: Can the owner and contractor, who is to furnish labor and material, the cost of which is included in the contract price to be paid to the contractor, stipulate that materialmen who furnish material as contemplated shall not have the security provided by law, a lien on the property to the extent of the unpaid balance due

the contractor after notice given to the owner? Code, § 8840.

If so, are materialmen charged with notice of such stipulation, or does the question turn on actual notice thereof, no constructive notice by recording acts being provided?

It is sometimes broadly stated that materialmen dealing with the contractor are chargeable with notice of the terms of his contract with the owner.

The entire subject-matter grows out of construction contracts. Under statutes like ours the lien of materialmen of the contractor extends only to the unpaid balance due or to become due the contractor. It follows that if no unpaid balance accrues in the execution of the project under the contract, no lien can attach. Stipulations in the contract, such as the right of the owner to complete the building at the contractor's expense in case of his default, go to the question of the existence of an unpaid balance. Such was the case of Cranford Mercantile Co. v. Wells, 195 Ala. 251, 70 So. 666, wherein it was said materialmen must take notice of the stipulations of the contract in that regard.

This is but to say in effect that all persons are charged with a knowledge of the law; knowledge that, under the law, the materialman's lien is limited to the unpaid balance which should accrue under such contracts.

But it is quite a different question where the owner and contractor have stipulated for all the things upon which materialmen's liens arise, under the law, and still write into the contract covenants forbidding the creation or filing of any liens, and charge materialmen and laborers with knowledge of such stipulations.

This court has never so decided.

The decisions in other jurisdictions are at variance, sometimes in dealing with similar statutes, and sometimes because of difference in legal structure on the subject.

A review of the decisions appears in the note 13 A. L. R. page 1065.

The text of Corpus Juris (40 C. J. p. 148, § 166 [c]), reads: "The weight of authority supports the view that a stipulation against liens contained in the contract between the owner and the contractor will not deprive the subcontractor, materialman, or workman of the right to a lien which the statute gives him, unless he assents or agrees to the stipulation or at least has actual notice thereof before accepting the employment or furnishing the materials."

Decisions of many states appear in the notes to this text.

The text of Ruling Case Law (18 R. C. L. p. 963) reads: "The owner and contractor cannot contract to waive liens of subcontractors, which have already attached or where the statute provides for a lien in favor of each separately and independently." Central Trust Co. v. Richmond, N. I. & B. R. Co., 68 F. 90, 31 U. S. App. 675, 15 C. C. A. 273, 41 L. R. A. 458; Green v. Williams, 92 Tenn. 220, 21 S. W. 520, 19 L. R. A. 478.

See, also, the late case of Boulia-Gorrell Lumber Co. v. East Coast Realty Co., 84 N. H. 174, 148 A. 28, 69 A. L. R. 1200, which is quite analogous to the present case as to facts and the statutes construed.

In states where the owner's property may be subjected to liens beyond the amount of an unpaid balance due the contractor, the courts, for the protection of the owner against imposition, have recognized the right to stipulate against liens rather broadly, charging materialmen with notice of such stipulations if so clear and unequivocal that the ordinary reader would take notice. 40 C. J. p. 145, § 163, and notes; Id. p. 148, § 167.

Even in such states the courts, in order to protect laborers and materialmen from imposition, have drawn many fine distinctions as to the sufficiency of these stipulations, and often declared them fraudulent and void. Legislatures have taken the matter up, and required contracts to be recorded. 40 C. J. p. 148, § 167; 13 R. C. L. p. 1084 et seq.

But in states where materialmen have a direct lien, but limited to the amount of the unpaid balance due the contractor, after actual notice of such claims, the great majority of states hold such stipulations not binding on materialmen in the absence of actual notice.

In case of such actual notice, the materialman is held bound on the ground of his own waiver. Upon well-known principles waivers arise only upon knowledge of the matter waived. Bates Machine Co. v. Trenton & New Brunswick Railroad Co., 70 N. J. Law, 684, 58 A. 935, 103 Am. St. Rep. 811.

Without hesitation, we approve and declare the rule, in keeping with the declared spirit of our mechanic's lien laws for half a century, that no stipulations in contracts between owner and original contractor waiving liens are binding on laborers and materialmen, unless they have actual notice thereof when they furnish such labor or materials.

It is difficult to see any sound reason why

they should anticipate any arrangement between owner and contractor by which the owner gets the benefit of the product of their labor and material, and deprives them of the security given by law, which, at the same time, protects the owner from double liability.

In some states construction loans secured by mortgage are given preference, or put on an equal footing with others contributing their effects to the improvement. But such is not the law of Alabama. The statute expressly provides the lien, any lien under the mechanic's lien law, shall be superior to all mortgage liens as to the building.

This statute cannot be evaded by any waiver of the contractor. Such waiver is effective as to himself alone, subordinating his claim to any surplus after liens of laborers and materialmen are satisfied.

We are not impressed, taking the contract as a whole, there was any intention in this case to cut off liens of materialmen. As before noted, anticipating such claims might arise, provision was made to take care of them.

The stipulation that the final mortgage, to be given for an amount expected to clear up all claims, should have priority as to a limited amount, if binding on materialmen, would not clearly imply a consent to give priority to a separate mortgage upon failure to obtain the final loan adequate to meet the situation.

Without question the court properly decreed priority of the mortgage upon the land. But the court erred in decreeing priority of the mortgage lien over materialmen's liens upon the building, and in directing that after paying on the mortgage debt the sum of $5,400, the ascertained value of the land without the building, the residue of the mortgage debt, $13,974.45, be paid out of remaining proceeds of sale in priority to the claims of materialmen.

The court further decreed to Rogers Plumbing & Heating Company priority in payment of their lien, $4,632.02, over other materialmen.

Without here reviewing the evidence, we conclude it does not sustain a finding that this claimant stands in the position of an original contractor with the owner; nor gave the owner the statutory notice to acquire a preferred position under Code, § 8832.

The letter to the architect, relied upon as such notice, reads: "Please be advised that on a previous date I have signed a contract with Mr. E. C. Coston, Const. Co. to furnish all plumbing and heating for Apartment building to be erected on Reid Street, Tuscaloosa, Ala. The owners, V. C. Foster and W. H. Oldham, we understand to be represented by you."

Without passing upon whether this was written "before furnishing any material" within the meaning of the statute, it is not a compliance therewith.

True, by amendment, a form of notice has been written into the statute, which in several respects fails to give the information prescribed in the body of the statute. We do not feel authorized to further deplete this important statute by approving a notice which does not give at least the information contained in the prescribed form of notice. The letter fails to meet this requirement.

The court erred in decreeing Rogers Plumbing & Heating Company priority over the materialmen.

The same conclusion is reached as to the claim of Albert Holman Lumber Company.

The court segregated this claim and gave priority to an item for brick, $913.03, on the idea that, as to this, the claimant is in the position of an original contractor, one furnishing material under contract with and on the credit of the owner.

The evidence does not sustain this view. The fact that the owner had in the first instance agreed to furnish the brick, but, failing to do so, the contractor purchased them on his own account, does not put the seller in the position of an original contractor.

Since we hold the mortgage lien on the building subordinate to all materialmen's liens, the priorities between them are not of concern to the mortgagee. But other materialmen have assigned errors, and argue that all materialmen should stand on a like footing. We so hold.

The trial court ascertained and decreed an unpaid balance due the contractor of $30,000.

The mortgagee challenges this finding on the ground of an entire contract.

On the failure of the owner to obtain the final loan, and make payments as the work progressed, the contractor finally abandoned the work. The building was not completed.

We agree with the trial court that the contractual provisions hereinabove set out do not show an entire contract, binding the contractor to go on to completion at his own expense.

The agreement to obtain a final loan or otherwise meet the estimates was contractual, in character, and a failure so to do a breach entitling the contractor to recover and his materialmen to subject an unpaid balance for work done and material furnished before abandoning the project. Wigfield v. Akridge, 207 Ala. 560, 93 So. 612; Varner v. Hardy, 209 Ala. 575, 96 So. 860; Carbon Hill Coal Co. v. Cunningham, 153 Ala. 573, 44 So. 1016; Hall v. Gunter & Gunter, 157 Ala. 375, 47 So. 155; Russell v. Bush, 196 Ala. 309, 71 So. 397; 40 C. J. pages 151, 154 and 156.

The mortgagee further challenges the decree of the court ordering a sale of the property as a whole, upon the ground that the statute (Code, § 8833) limits the remedy in such case to a sale and removal of the building; and a mortgage may not be foreclosed without the consent of the mortgagee.

Our statute (Code, § 8842) confers jurisdiction in equity to enforce mechanics' liens without special ground of equity.

Code, § 8935, confers general jurisdiction in equity to enforce all statutory as well as common-law liens, declaring the statutory *modes of enforcing* liens to be cumulative merely.

Regardless of statute equity courts have general jurisdictions to adjust priorities among conflicting liens. In the instant case the bill contains equity for the enforcement of materialmen's liens, and also equity for the adjustment of priorities between mortgagee and materialmen, all of whom are before the court.

On principle as well as the authority of our former decisions, we hold the court of equity has plenary power to mold its decrees in such form as to conserve the equities of all parties; and may, when a removal of the building would, in large measure, operate a destruction of the security, order a sale of the property as a whole, adjusting priorities in the proceeds on equitable principles. Birmingham Bldg. & Loan Ass'n v. May & Thomas Hardware Co., 99 Ala. 276, 13 So. 612; Vesuvius Lumber Co. v. Alabama Fidelity Mortgage & Bond Co., 203 Ala. 93, 82 So. 107; Wimberly v. Mayberry & Co., 94 Ala. 240, 10 So. 157, 14 L. R. A. 305; Mathis v. Holman, 204 Ala. 373, 85 So. 710; Grayson v. Goolsby, 224 Ala. 75, 139 So. 106; 40 C. J. page 506; Byrum Hardware Co. v. Jenkins Bldg. Supply Co., 226 Ala. 448, 147 So. 411; Anniston Banking & Loan Co. v. Worsham, 227 Ala. 48, 149 So. 91; Becker Roofing Co. v. Jones, 225 Ala. 638, 144 So. 865; Wood Lumber Co. v. Greathouse, 226 Ala. 644, 148 So. 125.

The decree will be here corrected so as to subordinate the residue of the mortgage debt, viz., $13,974.45, to the several claims of materialmen; and so as to place the claims of Rogers Plumbing & Heating Company and Albert Holman Lumber Company on the same footing as other materialmen.

As thus corrected the decree of the court below is in all things affirmed.

Corrected and affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.