(78 South. 218)

## COLLEGE COURT REALTY CO. v. J. C. LETCHER LUMBER CO. (3 Div. 313.)

(Supreme Court of Alabama. Nov. 15, 1917. Rehearing Denied March 23, 1918.)

1. MECHANICS' LIENS ⬤—130 (1)—FURNISHING MATERIAL FOR SEVERAL BUILDINGS.
   Where lumber was furnished under one contract for several buildings, the materialman was entitled to a lien on each building separately, if the amount and value going into each building was ascertained before filing of the lien.

2. MECHANICS' LIENS ⬤—132(3) — TIME FOR FILING LIEN.
   Where lumber was sold on 60 days' time to the owner of a building, a lien could be filed within 6 months of the expiration of the 60-day period.

Appeal from City Court of Montgomery; Gaston Gunter, Judge.

Proceedings by the J. C. Letcher Lumber Company against the College Court Realty Company, to enforce a mechanic's lien. Judgment for plaintiff, and defendant appealed. Transferred from the Court of Appeals under section 6, Act April 18, 1911 (Acts 1911, p. 449). Affirmed.

Tyson, Arrington & Arrington, of Montgomery, for appellant. Thomas & Wiley, of Montgomery, for appellee.

MAYFIELD, J. The action is by appellee against appellant, to recover for the price of lumber sold, and to establish a materialman's lien on property improved by the use

---

of the lumber through the erecting of buildings thereon. The trial resulted in a judgment for the plaintiff as for the price of the lumber, with the fixing of the lien, and from this judgment the defendant appeals.

No question is raised as to the price of the lumber, but it is insisted that there was no right to the materialman's lien, as established.

There are but two assignments of error, and, as counsel for appellant state in their brief, these two assignments of error raise three propositions, which are as follows: First. The lumber was not furnished for a particular building or lot on which a lien is claimed. Second. That the claim of lien was not filed in the office of the judge of probate within six months after the indebtedness accrued. Third. That the lumber did not go into the building on which the lien is claimed. These are questions purely of law and fact, as appears from the record and the briefs of counsel. We cannot agree with counsel for appellant as to every one of the propositions, and hence the judgment must be affirmed.

While it is true that the record does not show a contract specific in terms as to how much lumber was to be used on any particular lot or house, it does show that all the lumber was to be used, and was used on several lots of defendant's, and went into several houses thereon; and the evidence, we hold, sufficiently shows how much was used in each particular building, to meet the requirements of our statute as heretofore construed by us. Here the lumber or material purchased was to be used in three buildings to be erected on a piece of property or place known as "College Court." All the materials did go into the three houses; and the evidence, showing the amount and value of the lumber entering into each house, was sufficient to support the lien judgment. The case was tried by the court without a jury, and we agree with the trial court in its findings.

[1] The amount and value of the material that went into each house was ascertained, and was sufficiently specified in the claims filed in the probate court; and it does not defeat the lien that this amount or value going into each house was not ascertained at the time the sale of the lumber was agreed upon. It was so ascertained before there was any attempt to enforce the lien, and the claim filed in the probate office fully met the requirements of the statute. There was no attempt here to fasten a lien upon any particular building or lot, as for the value of the materials which went into other buildings or other property, as there was in the cases relied upon by appellant. It is very true that no lien attaches to one piece or parcel of property or to a building or improvement thereon, as for the materials furnished for, or the work done upon, another lot, building, or improvement; but it is not necessary that the original contract to furnish specify the amount or value that is to be furnished for, or that is to go into, each particular house or lot, where it is intended that the whole shall be used on several different lots or buildings, as was done in this case. It is sufficient if that is ascertained before the lien or claim therefor is filed in the probate court.

It is probable that the liens on all three of the houses could have been declared and enforced in one suit in equity, as was done in the case of Wade v. Wyker, 171 Ala. 466, 55 South. 141, but it does not follow that the lien could not be enforced in a court of law, on one or more of the lots and houses, if the material furnished to each separate lot or house be ascertained, and account therefor is made out before the lien or the claim thereof is filed in the probate court. If the three actions or suits had been brought at once, and were pending at the same time, they probably could have been consolidated; but as to that we need not decide, because the question is not before us.

We are not willing to hold that, in order for the lien to arise against each of the several lots or buildings, the original contract of sale should fix the exact amount which was to go into, or be used in, the several buildings, where the sale of material is in gross for several houses, but hold that it is sufficient if it is thereafter ascertained what was used upon or put into each separate house or lot, and the claim and account is made as to each house or lot separately, and the claim therefor is filed in the probate court within the time required, and in the manner and form specified, by the statute. We are not of the opinion that the case of Eufaula Water Co. v. Addyston, etc., Co., 89 Ala. 552, 8 South. 25, holds to the contrary. In that case it is said:

"The proposition that the lien attaches only where the materials have been furnished for the purpose to which they are devoted, and that it does not arise where they have been supplied on the general credit of the purchaser, and without reference to any contract, express or implied, for their use in a particular building, or for the improvement of certain land, cannot be denied. The use to be made of the materials, the structure into which they are to enter, or the land which they are to improve, must be in the contemplation of the parties when they are furnished, else it cannot be said to have been furnished 'for any building or improvement on land * * * under or by virtue of a contract with the owner thereof,' etc.; nor the claim therefor enforced as a lien against property to which they have been applied, in the unrestrained discretion of the purchaser. Chouteau v. Thompson, 2 Ohio St. 114; Cotes v. Shorey, 8 Iowa, 416; Fuller v. Nickerson, 69 Me. 228; Rogers v. Currier, 13 Gray [Mass.] 129; Tyler v. Currier [13 Gray (Mass.)] 134; Hills v. Elliott, 16 Serg. & R. [Pa.] 56; Weaver v. Sells, 10 Kan. 609; Tyler v. Jewett, 82 Ala. 93, 100 [2 South. 905]. But it is equally well settled that there need be no stipulation for a lien, nor need the contract of supply be made with a view to charging the property. If the contract of the parties is no more than a sale of the materials for a

particular building or improvement on land, or to be used in the construction of certain works, and there is nothing negativing the reservation of a lien, or the idea that the materialman, if need be, will look to the property for payment. the law raises the implication that the contract of furnishing was made on the security afforded by the property into which the materials enter, and will declare and enforce the claim against the property itself."

Likewise we find nothing to the contrary in the cases of Cook v. Rome Co., 98 Ala. 409, 12 South. 918; Johnson v. Simmons & Bagwell, 123 Ala. 564, 26 South. 650; Cocciola v. Wood-Dickerson Co., 136 Ala. 532, 33 South. 856; Robinson v. Crotwell Co., 167 Ala. 566, 52 South. 733, in which last-cited case appear the following quotations from two older decisions of this court:

"We do not declare as a universal proposition that the burden is on the materialman to show that the goods were used in the construction of the particular building; but, where the contractor stipulates to furnish the material, and the owner of the property is not notified of the purchase, the materialman should show, with reasonable satisfaction, that the goods were used in the building." May & Thomas Co. v. McConnell, 102 Ala. 577, 581, 14 South. 768, 769.

"It does not appear by the statement of the claim filed in the office of the judge of probate what part of the gross amount claimed was for materials used in the building of this house. Very clearly, in principle and upon all authority, the statement thus filed was wholly bad and inefficacious to fix a lien upon either of the lots and houses in question." Leftwich Lumber Co. et al. v. Florence, etc., Ass'n, 104 Ala. 584, 596, 18 South. 48, 51.

We hold that the facts of this case bring the lien within the stated rule. While there is some conflict in this testimony as to how much of the lumber went into each house, yet we agree with the trial judge in his finding. The same condition as to evidence occurred in the case of Wade v. Wyker, supra, and we there said:

"While the evidence is not as conclusive as it might have been in respect to the application of each (of a few only) item to the building against which it is particularly charged in the statement exhibited with the bill, there was ground in the evidence for the filing made in these respects. That the conclusion, in these few particulars, reached below, was not warranted we cannot say."

[2] We cannot agree with appellant that the lien was not filed within the time specified in the statute. The sale was not a running account, in such sense that the date of the supplying of the last item should be taken as the time from which the statute began to run. Here, the sale was by express agreement "on credit." Here, the indebtedness did not accrue until 60 days after the contract of sale; and the claim was filed within six months after the indebtedness accrued; and the fact that the material was furnished before the demand accrued makes no difference, where the transaction is between the owner and the materialman, as in this case. The rule might be different if the contract had been between the materialman and a contractor, and not between him and the owner, as in this case.

We are of the opinion that the decision of this court in the case of Cutcliff v. McAnally, 88 Ala. 507, 509, 7 South. 331, is not against the holding here, but is in support of it. It is there said:

"Was the statement of the demand filed with the judge of probate within six months after the indebtedness *accrued*, within the meaning of the statute? In this connection the word 'accrued' is evidently used in the sense of having come to maturity, so as to be due and payable. Or, in other words, it indicates the time when the work contracted for is completed or the materials furnished, one or both, as the case may be, and the account for the same is past due. This is implied in the further description of such indebtedness, thus required to be filed, as 'a just and true account of the demand *due* him.' Code 1876, § 3444. Requiring suit to be instituted on such claim within 90 days after filing, moreover, implies that the demand must have been due and payable when filed."

The third proposition is sufficiently answered by what we have said as to the first proposition. See a similar case between the same parties. Ante, p. 361, 78 South. 217.

This court finding no error, the judgment appealed from must be affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.

### On Rehearing.

PER CURIAM. Rehearing denied.

McCLELLAN, J. (dissenting). In my opinion the application for rehearing in this case, and its counterpart, College Court Realty Co. v. J. C. Letcher Lumber Co. (present term) 78 South. 217,[1] should be granted, and so for the reason that the undisputed evidence in both of them discloses that no particular materials, of the unseparated whole, was purchased for use in a particular building. In Copeland v. Kehoe, 67 Ala. at page 597, it was said:

"A builder's or mechanic's lien is purely statutory. Its character, operation, and extent must be ascertained by the terms of the statute creating and defining it. Of itself, it is a peculiar, particular, special remedy given by statute, founded and circumscribed by the terms of its creation and the courts are powerless to take it up where the statute may leave it, and extend it to meet facts and circumstances, which they may believe present a case of equal merit, or a necessity of the same kind, as the cases or necessities for which the statute provides."

This doctrine was recently reaffirmed in First Avenue C. & L. Co. v. McWilson, 182 Ala. 282, 62 South. 531. In Cocciola v. Wood-Dickerson Co., 136 Ala. 532, 536, 33 South. 856, treating the mechanic's and materialman's lien law applicable to Jefferson county only, this court very plainly said:

"Prior to this statute, in order to acquire a lien, the *particular* goods must have been furnished for the erection of the *particular* building on which the lien is sought [italics supplied]. Cook v. Rome Brick Co., 98 Ala. 410 [12 South.

· [1] Ante, p. 361.

918]; Johnson v. Simmons, 123 Ala. 564 [26 South. 650]. And to secure the benefits of the lien, it was necessary to allege and prove that each piece of material so furnished was actually used upon the *particular* building so designated [italics supplied]. Leftwich v. Florence, 104 Ala. 585 [18 South. 48]; Lee v. King, 99 Ala. 246 [13 South. 506]; Eufaula v. Addyston, 89 Ala. 555 [8 South. 25]; May v. McConnell, 102 Ala. 577 [14 South. 768]."

This explicit statement was justified by the authorities there cited, especially that of Cook v. Rome Brick Co., 98 Ala. 409, 416, 12 South. 918, 920, where it was said:

"Charge 3, given for plaintiff, is bad. Conceding, though the propriety of so doing is not altogether clear, that if Smith and Camp, the contractors and the materialman, had in their minds, when the materials were supplied, that they were to be used in the erection of the house against which the lien is asserted, this would be the equivalent of an intention and purpose on their part that the supplies should be so used, yet the purpose must have been more specific than is hypothesized in this instruction. It must have had reference to the *particular* building to the erection of which the materials were devoted, and which is now sought to be subjected to the payment of the price thereof, and not merely to a house which the contractors were building in a named city."

The Cook Case, supra, was decided at the term 1892-93. The Cocciola Case, supra, was decided at the term 1902-03. The General Statutes in the court's mind when the Cocciola Case was decided were re-enacted in the subsequent Code of 1907. It has been long and repeatedly held here that:

"In the adoption of the Code the Legislature is presumed to have known the fixed judicial construction pre-existing statutes had received, and the substantial re-enactment of such statutes is a legislative adoption of that construction." 11 Michie Digest Ala. Rep. p. 1114, where a large number of decisions are noted.

36 Cyc. p. 1144, puts the same doctrine in these words:

" * * * When a statute has been construed by the highest court having jurisdiction to pass on it, such construction is as much a part of the statute as if plainly written into it originally." Douglass v. Pike County, 101 U. S. 677, 687, 25 L. Ed. 968.

No real reason appears for denying this settled rule's application to the re-enacted statutes here involved. A reading of both the Cook and Cocciola Cases, supra, will readily show, not only the propriety, but the necessity, for the judicial act of construing the statutes re-enacted in the Code of 1907, thus refuting the suggestion that the quoted expressions in the Cook and Cocciola Cases were dicta. Satisfactory and approved definitions of dictum are given in 3 Words and Phrases (O. S.) pp. 2051, 2052; 2 Words and Phrases (N. S.) pp. 31, 32. It has never been supposed, so far as I have been able to ascertain, that an opinion was only authoritative in subsequent cases identical with it in *point of fact*. While the Cook and Cocciola Cases, supra, do not involve the question of the application of the mechanic's lien statutes to cases identical with this and its

companion case, yet both of them involved the construction of the statutes with which the appeals concern this court. In short, it was necessary in the Cook and Cocciola Cases to define the statutes there involved in order to decide the concrete cases.

The case of Wade v. Wyker, 171 Ala. 466, 55 South. 141, was a bill filed to subject the unpaid balance due the contractor, and hence did not decide, or assume to decide, anything pertinent to the question here involved.