(134 So. 658)

## TALLAPOOSA LUMBER CO. v. COPELAND et al.
### 6 Div. 787.

Supreme Court of Alabama.
May 14, 1931.

42

. Benners, Burr, McKamy & Forman, of Birmingham, for appellee City Realty & Mortgage Co.

Harsh & Harsh, of Birmingham, for appellant.

. SAYRE, J.

Complainant, Tallapoosa Lumber Company, seeks to have a lien declared and enforced for materials furnished for buildings on lots 3, 4, and 6 according to the survey of South Park in Jefferson county. The numbered lots, each fronting fifty feet on a street, were at the time of the contract for the materials in question the property of appellee Roy Copeland. Before the bill was filed, the several lots had passed into the ownership of different persons who are made parties defendant to the bill and have suffered decrees pro confesso. The cause proceeded to moneyed decree against appellee Copeland, but appellant's prayer for a lien was denied, and this last-named provision of the decree is brought here for review.

Complainant, Tallapoosa Lumber Company, furnished materials used in the construction of three houses, one each on lots 3, 4, and 6. Lot 5, lying between lots 4 and 6, was in a different ownership, and complainant claims no lien upon it. Lots 4 and 6 are not contiguous; intervening lot 5 is fifty feet wide. The building materials for which complainant claims a lien were furnished upon

one general order to be used in three buildings simultaneously in process of construction on lots 3, 4, and 6, and complainant's claim of lien, filed in the office of the judge of probate, and his bill in this cause as well, claim a lien on the three buildings indiscriminately. The question presented for decision is whether complainant is entitled to a lien in manner and form as claimed.

Complainant claims a lien in general under section 8832 of the Code. The difficulty, if any, in the formulation of a proper decree, arises out of the fact that lots 4 and 6 are separated by intervening lot 5 and the provision of section 8839 of the Code, which, in relevant part, we quote:

"When the land on which the building or improvement is situated is in a city [the case here], town, or village, and the improvement consists of * * * separate buildings upon contiguous or adjacent lots * * * and erected under one general contract [the case here], the lien for the labor, materials, * * * so furnished, shall attach to all such * * * improvements, together with land upon which they are situated, and it shall not be necessary to file a separate lien for each lot, building or improvement, but the party claiming the lien may elect to file a separate lien for each lot, building or improvement."

The question presented for decision, to state it with greater particularity than heretofore, arises out of so much of the terms of the last-mentioned section of the Code as provides a lien when the improvement consists "of separate buildings upon contiguous or adjacent lots." The meaning of "contiguous" would appear to be plain enough; is not in dispute. The term, as used in the statute, obviously applies to lots or parcels of land which touch along a considerable part or the whole of one side. The difference between the parties arises in the main over the meaning of "adjacent" in the statute. Appellee would construe the last-named term as practically synonymous with the first. But we think the two terms are used to express different ideas, and that "adjacent" as used in the statute means lots or parcels of land which lie close to each other, but not necessarily in actual contact. See Webster's New International Dictionary, where these definitions are found. It is not considered that anything was said in Grimsley v. First Avenue Coal & Lumber Co., 217 Ala. 159, 115 So. 90, in essential conflict with these definitions. The opinion here is that, appellant's material having been furnished under one contract for use in the construction of three buildings, one on each lot, no effort being made to designate the building into which any part of it should go, a lien for the whole upon the three lots collectively resulted, and nothing to the contrary is found in the previous decisions of this court. The decisions in other jurisdictions differ; but the language of the statute leads the court here to infer—necessarily so—that it was intended for the adoption of the rule in a number of jurisdictions which is expressed at page 1031 of 10 A. L. R. as follows: "In some jurisdictions it is not necessary that lots under the same ownership should be contiguous, to entitle a person who has furnished material or performed labor on houses built thereon, under an entire contract, to a single mechanic's lien against the whole property"—citing cases from Arkansas, Iowa, Maryland, Nebraska, North Carolina, Oklahoma, and Virginia, and that appellee's main objection to the lien claimed in this case must be overruled. It is not necessary to construe Richardson Lumber Co. v. Howell, 219 Ala. 328, 122 So. 343, as holding anything to the contrary. The proceeding for a lien in that case was had under the last alternative of the statute reading, "but the party claiming the lien may elect," etc. In the present case, it seems, that alternative is put out of consideration by the fact that the evidence furnished no data from which to estimate the value of the material used in each of the buildings separately. See, also, Wahouma Sav. Bank v. Southern, etc., Co., 220 Ala. 140, 124 So. 388.

■ It is further suggested in appellee's brief that the evidence failed to show that the statement and claim of lien was filed in the office of the judge of probate within six months after the indebtedness accrued, as provided by section 8836 of the Code. The certificate of the judge of probate leaves the date of filing blank; but the statement there filed shows materials furnished as late as March 23, 1927, and was verified August 18, 1927. The testimony of appellant's agent and witness is that its bill for material became due April 7, 1927, and that its statement for a lien was filed with the judge of probate August 23, 1927—a date well within the time of six months after the indebtedness accrued prescribed by the statute, section 8836 of the Code, for the filing of such statements. This testimony, uncontradicted, as to the date of filing, in default of better evidence by the probate judge's notation, must be accepted as true, and serves to bring appellee's proceeding for a lien within the time prescribed by the statute.

It is further considered that the evidence fairly shows that the materials for the price of which appellant claims a lien went into the buildings on lots 3, 4, and 6, as appellant claims, and that there is nothing to the contrary shown by the record.

■■ City Realty & Mortgage Company, a party defendant to the bill, and the real appellee in this appeal, answers that it made separate mortgage loans, one on each of the lots involved, and that such mortgages were ex-

ecuted before any material was furnished by appellant towards the construction of the buildings on lots 3, 4, and 6. The proof fails to sustain this averment. The mortgages were dated April 26, 1927. The proof is that materials were furnished on and after February 9, 1927, and building operations began at that time. These facts fastened notice of appellant's lien on the mortgagee as of the last-mentioned date, and armed appellant with priority over the mortgage company's lien. First Avenue Coal & Lumber Co. v. King, 193 Ala. 438, 69 So. 549; Grimsley v. First Ave. Coal & Lumber Co., supra.

■ And on this appeal, by way of alternative defense, the mortgage company contends that its money, or a part thereof, went to discharge prior mortgages—mortgages antedating building operations—and claims subrogation to such prior mortgages. There is evidence of a purchase-money mortgage executed by appellee Copeland, prior to building operations on the lots in question, and, of course, prior to the mortgages of April 26, 1927, but we are unable to determine the amount, if any, due upon such mortgage, and, in any event as to that, the court here cannot make any decree for the allowance of the claim of subrogation—this for the reason that no such question was raised in the pleading in the trial court.

For the error indicated, the decree will be reversed and the cause remanded. The court below will be authorized to proceed with the cause as justice and equity may demand.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.