164 So. 55

### CITY REALTY & MORTGAGE CO. v. TALLAPOOSA LUMBER CO.

#### 6 Div. 599.

Supreme Court of Alabama.
Oct. 17, 1935.

Rehearing Denied Nov. 29, 1935.

Richard D. Gilliam, Jr., of Birmingham, for appellant.

Harsh, Harsh & Hare and Oliver Henderson, all of Birmingham, for appellee.

BOULDIN, Justice.

The bill was filed by Tallapoosa Lumber Company, appellee, to enforce a materialman's lien in solido on three lots, Nos. 3, 4, and 6, and the buildings erected thereon.

On former appeal (Tallapoosa Lumber Co. v. Copeland, 223 Ala. 41, 134 So. 658, 75 A. L. R. 1325) we held the record sufficiently disclosed the materials were furnished the owner, Roy Copeland, under one contract for use in the several buildings under construction at the same time, and that same were so used; that the lots were "contiguous or adjacent," notwithstanding a 50-foot lot, No. 5, under separate ownership, lays between lots 4 and 6, and that under Code, § 8839, the complainant had an election to claim and enforce one lien against the entire property. The present record on these issues is the same as then before us. We adopt our former decision on this phase of the case.

The present appellant, City Realty & Mortgage Company, claims under three mortgages, one on each of the lots, executed contemporaneously by the owner, Copeland, to secure a loan or loans.

By demurrer to the bill a question was raised touching the sufficiency of the description of the property. It was describ-

ed as "situated in Jefferson County, Alabama, to-wit: Lots Numbered Three (3), Four (4) and Six (6), in Block No. Two (2), according to the survey of South Park as recorded in the Office of the Judge of Probate of Jefferson County, Alabama, in Map Book 3, Page 44." It further appears from the bill that lot No. 3 is known as 2717 Florida avenue, and lot No. 4 is known as 2715 Florida avenue.

The contention is that this does not show the lots are situated in a "city, town or village" as per Code, § 8832.

Without dispute the evidence discloses that the lots are in the city of Birmingham. While exact pleading should expressly aver the lots are in a "city, town or village," when the lien is claimed on them as such, the description here reasonably imports city or town lots, with street numbers, fully identifies the property, and on the record as a whole no injury resulted from overruling the demurrer.

The questions of moment on this appeal concern the priorities between the materialman's lien and the mortgage liens, as presented by appellant's cross-bill and the evidence.

Appellant's mortgages were executed after the buildings were in course of construction. Standing alone, they are subordinate to the materialman's lien both as to the lots and the buildings. Code, § 8833.

But the proceeds of the mortgage loan were applied by appellant in large measure to the removal of prior incumbrances claimed to be superior to the materialman's lien on the lots, and, in part, on both lots and buildings. Appellant claims a right of subrogation in equity to the liens so removed.

Among these was a local assessment by the city of Birmingham against each of these lots for street improvements.

Admittedly these were lawful assessments against this abutting property made final when the buildings on the lots were nearing completion. Such assessments are by statute made a lien on the abutting property "superior to all other liens, except those of the state or county for taxes." Code, § 2199.

Moreover, such assessment is a betterment tax, limited by the Constitution (section 223) and statute (Code 1923, § 2174) to "the increased value of such property by reason of the special benefits derived from such improvements."

These assessments are for a public purpose; the basis, in most cases, of issues of bonds.

We are of opinion and so declare that such liens have priority over materialman's liens; otherwise, the materialman would obtain the benefit of enhanced security at public expense.

The lien attaches to the property as a whole, the lot and the buildings as part of the realty, and takes priority over the materialman's lien as to both lot and buildings, whether the assessment is made before or after work is begun on the buildings. Code, § 8833, has no application to such assessments. 44 C. J. 806, § 3416.

We are further of opinion that the mortgagee, appellant, is entitled to be subrogated to such liens, having paid the assessment out of the money loaned. The mortgagee was not a mere intruder or volunteer. It had the same right to make a loan on the property as the materialman had to improve it.

The mortgagee, in clearing its own security, worked no hurt to the materialman. We can see no basis in equity for a contention which would in effect give the materialman the benefit of removing these assessment liens, rather than the mortgagee, whose funds were so applied.

We, therefore, conclude the appellant, mortgagee, should be decreed a prior lien by way of subrogation on all the lots and buildings for the aggregate sum paid by reason of the local assessment liens of the city of Birmingham. Code, § 8936.

The trial court correctly recognized the superiority of the Sanders mortgage, a purchase-money mortgage outstanding at the time of the purchase by Roy Copeland, and properly decreed the appellant a lien by way of subrogation for the sum applied thereto, in priority to the materialman's lien upon the lots, but subordinate to the materialman's lien as to the buildings. Code, § 8833.

The purchase-money mortgage given by Copeland to his immediate vendor, W. T. Mooney, stands on a like footing. The mere fact that this mortgage may have been executed subsequent to the beginning of work on the buildings does not affect its priority. The materialman's lien on the land is limited to the "right, title, and interest" of the owner at the time work on the buildings is begun. Code, §§ 8832, 8833.

Outstanding purchase money on lands, in the absence of evidence of a waiver, implies a vendor's lien, or legal title reserved, and a mortgage therefor, nothing to the contrary appearing, is to be treated as a continuation or substitute for the original security. The court erred in failing to decree the mortgagee appellant priority upon the lands, not the buildings, for the sum applied to the removal of this Mooney mortgage.

The evidence warrants the finding that the mortgages given by Copeland to Annie Keith Russell for contemporaneous loans were executed subsequent to the beginning of work on the buildings, and appellant's equity of subrogation to these mortgages is subordinate to the materialman's lien of appellee, both as to lots and buildings. There was no error in the trial court's ruling on this issue.

Subsequent purchasers of the equity of Copeland in these properties suffered decrees pro confesso and make no claim to a marshaling of securities calling for a sale of the properties in inverse order of alienation. Apparently, they concede that prior liens will wholly consume the proceeds. Appellant cannot assert this equity, if such there be.

The statute, Code, § 8833, does not contemplate a decree directly vesting the lands in one party having the superior lien, and the buildings in another. The right to remove buildings is in the purchaser at a sale under decree.

No evidence was taken on the question of the effect of removal on the value of the buildings. If the security would be greatly destroyed by removal, the better rule is to sell the property as a whole, or in separate units, including lot and building thereon, as may appear to the interest of the lienholders; ascertain and decree the proportionate value of lands and buildings in the proceeds; and apply same to the payment of the liens according to priorities. Baker Sand & Gravel Co. et al. v. Rogers Plumbing & Heating Co. et al., 228 Ala. 612, 619, 154 So. 591.

The decree is reversed and the cause remanded, with direction to enter decrees fixing priorities as declared in this opinion. Further proof may be taken on the question last mentioned looking to the most advantageous method of selling the property, if the parties so desire.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.