This case concerns the Alabama mechanics' and materialmen's lien law. From a judgment below largely in favor of plaintiff-lienholder Bird, defendants appeal and Bird cross-appeals. We affirm as to most of appellants' contentions and reverse and remand as to Bird's cross-appeal.
 FACTS
In December 1977, Johnny O'Grady (Johnny) and his wife Linda O'Grady (Linda) *Page 99 
contracted to buy 26.660 acres of land in Shelby County from George and Page Seier (Seiers). When the sale closed on January 10, 1978, the deed passed title to Linda only; a 3.458 acre parcel was exempted from the purchase money mortgage executed that day by Johnny and Linda. A down payment of $20,000.00 served as consideration for this exemption; the mortgage amount was $50,000.00. Prior to the closing, Johnny, who was in the construction business, had begun building a house for himself and his family on the portion of the land which was exempted from the mortgage to the Seiers in order to facilitate financing for their house.
S.M. Bird (Bird) does business as a building supplier; Johnny had a credit account with Bird, and Johnny obtained materials for his house on credit. Johnny also renovated a block house which stood on the 3.458 acres and built a barn on the property, but outside the reserved acreage. Bird supplied materials for all three buildings, but the invoices did not distinguish which materials were for which building.
Prior to contracting to buy the Seiers' land, Johnny and Linda had contracted to sell their home, with expectation of realizing $30,000.00 as their equity. When this contract was not carried out, Johnny was unable to pay Bird for the materials purchased for his new home, an account which ultimately amounted to $29,819.91. On April 20, 1978, Bird filed a verified statement of lien, which substantially followed the form of Code 1975, § 35-11-213, for this amount plus interest and attorney's fees against the three buildings above and "one acre of land surrounding [each building] and contiguous thereto." Johnny's credit agreement with Bird provided for 18% interest and attorney's fees in the event of default.
On August 17, 1978, Bird filed a complaint in circuit court against Johnny and Linda, the Seiers, First Federal Savings and Loan Association of Bessemer (First Federal) and the Roomakers Corporation (Roomakers). First Federal held a mortgage which Johnny and Linda had executed on the 3.458 acres to secure construction financing, and Roomakers had filed a verified statement of lien on August 8, 1978, in the amount of $1,877.36 plus interest against the newly constructed house and one acre surrounding it. Roomakers' lien was for carpeting supplied by it to Johnny and Linda.
 THE CASE BELOW AND ISSUES PRESENTED ON APPEAL
Bird's complaint sought a judgment that his lien be established for the $29,819.91 claimed therein, that his lien had priority over all other interests in the land, and that it be foreclosed to satisfy the indebtedness. The Seiers filed a motion to dismiss which alleged various grounds including, among others, allegations that Bird claimed three liens in one statement of lien and that the land was insufficiently described in his statement. Roomakers filed a general denial and a counterclaim and cross-claim on its lien. First Federal had a default judgment against it, but this was set aside, and it filed an answer which challenged the validity of the lien. Johnny and Linda filed a motion to dismiss which paralleled that of the Seiers.
When the trial court denied these motions, Johnny and Linda filed an "Answer" alleging that the complaint failed to state a claim. The Seiers filed an answer alleging that their mortgage had priority, that Bird's lien did not extend to the land covered by the Seiers' mortgage, and that Bird had not properly filed his lien or his suit. Bird amended his complaint three times, the first two for clarification and the third to respond to all the allegations of insufficiency of the liens. This third amendment alleged that up to that time Bird had no way of knowing either the allocation of the materials to the particular buildings or the exact description of one acre surrounding each building (his complaint included a correct description of both the larger tract and the exempted 3.458 acres).
The trial court ordered a survey of the property, including one acre surrounding each building. Defendants contest this *Page 100 
order as beyond the scope of the court's authority, but cite no cases to that effect and we find no merit in this contention; such an order is within the equitable power of the court. The case was heard without a jury during three days in May, 1979. Bird presented as a witness Curtis Michael Benson, who had served as Johnny's foreman on the job; Benson itemized the materials in Bird's invoices to each building.
There was much dispute over whether the lien could be enforced against Johnny's contract obligations because title to the land was taken in Linda's name. The court found, however, that the conveyance to Linda was a fraudulent attempt to defeat Johnny's creditors, that a constructive trust was created for Johnny's benefit, and that the trust should be terminated, vesting full title in Johnny.
The court further held valid Bird's and Roomakers' liens in that they contained a legal description of the smallest tract of land which Bird and Roomakers could reasonably have provided. The court further found that the additional one acre per building was described as specifically as practicable and that the court could fix the exact location of each one acre from the evidence. It held that the liens were good against each of the buildings and the land on which they were situated, but not against the additional one acre surrounding the buildings. The court felt constrained to hold that the additional one acre could not be subjected to lien because of our decisions in Bice v. R.L. Bains Builders, Inc., 269 Ala. 662, 115 So.2d 468 (1959), and Fowler v. Mackentepe, 233 Ala. 458,172 So. 266 (1937).
The court held that the Seiers' mortgage had priority over Bird's lien on the land on which the barn stood, but not "exceeding the portion of the unpaid balance of the purchase money mortgage attributable to this .062 acres of land, being the sum of $133.60, and [that] they have no interest whatever in the barn. . . ." Further, the Court held that Bird's and Roomakers' liens had priority over First Federal's mortgage. The court ordered that if the debts allocated to each building, plus interest and attorney's fees as provided by Johnny's credit agreement with Bird were not satisfied, the lien should be foreclosed.
Linda, the Seiers, and First Federal appeal the awards of the liens against them, and Bird cross-appeals the denial of a lien on the additional acre surrounding the buildings.
 ANALYSIS
We will discuss the issues raised by the parties in the following order:
A. Lien Statement Challenges.
1. Sufficiency of affidavit in verified statement of lien.
2. Propriety of filing one statement of lien for the three buildings without allocating the materials.
3. Adequacy of description of the one additional acre granted by statute.
B. Pre-trial Matters.
4. Power of the trial court to order a survey.
5. Statute of limitations argument against Roomakers.
C. Judgment.
6. Correctness of trial court's order that title be vested in Johnny based on fraudulent conveyance and constructive trust.
7. Priorities.
8. Award of contract-rate interest and attorney's fees.
1. Sufficiency of Affidavit.
Linda[1] argues on appeal that Bird's notarized affidavit on his lien statement does not meet the personal knowledge requirements of Code 1975, § 35-11-213, in that it includes the phrase "the same are true to the best of his knowledge and *Page 101 
belief." She relies upon Globe Iron Roofing Corrugating Co.v. Thatcher, 87 Ala. 458, 6 So. 366 (1889). This case is clearly inapposite both because Bird followed the form provided in § 35-11-213 (which was first included in the 1923 Code) and because a fuller quotation of Bird's oath would include, "That he is the claimant herein and has personal knowledge of the facts set forth. . . ." The affidavit in Globe did not contain such language. We find no error here. Cf. Harper v. J. C.Trucking Excavating Co., Inc., 374 So.2d 886 (Ala.Civ.App. 1978), cert. quashed, 374 So.2d 893 (Ala. 1979).
 2. Propriety of filing one statement without allocating the materials to each building.
Linda and First Federal claim on appeal, as they did at trial, that Alabama law requires Bird to have segregated the materials he supplied according to the buildings improved thereby before he filed his lien statement. Appellants rely chiefly on College Court Realty Co. v. J.C. Letcher Lumber Co.,201 Ala. 362, 78 So. 218 (1917), and on Richardson Lumber Co.v. Howell, 219 Ala. 328, 122 So. 343 (1929). In each of these cases the defendant property owner's challenge to the materialman's lien was that the contract had not specified which items supplied were placed in each building. This court held in both cases that the lien was not defeated by this lack of specificity in the contract. "It is sufficient if [the amount that is to go into each house or lot] is ascertained before the lien or claim therefor is filed in the probate court," College Court, supra, 201 Ala. at 363, 78 So. 218.
This court allowed plaintiffs in these cases to proceed with actions on their liens. Although the cases might be read as indicating that a lien claimant must separate charges among buildings before filing his statement of lien, we believe that they can also be read to hold that an initial claim for the amount due on a contract in an aggregate amount is not objectionable where the amount allocated to each improvement is determined in time to prevent prejudice to the defendant. InRichardson, supra, this court noted that "The defendants had the right, when sued, to demand a list of the items composing the sum sought to be collected, and were thereby protected from surprise when the proof was offered as to the respective houses, lots, and materials furnished for the improvements thereon." 219 Ala. at 330, 122 So. 343. This lack of surprise is even more the case where, as here, the property owner has had the materials supplied directly to himself as builder.
First Federal argues that neither of the mortgagees could have looked at the verified statement of lien or the complaint and determined how much money would have been required to secure the release of the property on which they held a mortgage. We do not see this as a substantial objection, because the mortgagees could have had discovery upon either plaintiff materialman or their co-defendant mortgagor. Finally, "[t]he decree of the court would necessarily conform to the rulings here that only material that went into a particular house was charged as a lien thereon . . .," Richardson, supra,219 Ala. at 330, 122 So. 343.
We hold, therefore, that the trial court committed no reversible error when it found, in accordance with evidence adduced at trial, the value of the materials supplied to each building. The lien statement itself is good because it so closely follows the Code form when it says "This lien is claimed, separately, severally and jointly, as to both the above specified 3 acres or less of land and the above specifiedbuildings and improvements situated upon the above described 20 acres, more or less, of land." [Emphasis added.] Cf. Code 1975, § 35-11-213
 3. Adequacy of description of the one additional acre granted by statute.
The verified statement of lien which Bird filed on April 20, 1978, claimed a lien against
 (1) the newly constructed dwelling house of Linda L. O'Grady and husband, Johnny W.O'Grady . . . which contains approximately *Page 102 
2,500 square feet, and the 1 acre of land surrounding and contiguous thereto, and (2) [a parallel clause claiming the barn and the one acre surrounding and contiguous to it], and (3) [a parallel clause claiming the renovated block house and the one acre surrounding and contiguous to it], all of which is a part of the following described real estate situated in Shelby County, Alabama and containing 20 acres, more or less, to-wit: [describing both the larger parcel and the 3.458 acres "encompasse[d] as a part of it" by correct legal description].
When Bird sought to have the lien declared and foreclosed, the defendants objected that the description of the property was insufficient.
The trial court's decree awarded the lien against the three buildings and the land on which they were situated, but not against the additional surrounding acreage. In so holding, the court relied on Bice v. R.L. Bains Builders, Inc., 269 Ala. 663, 115 So.2d 468 (1959), and Fowler v. Mackentepe, 233 Ala. 458,172 So. 266 (1937). We note to the same effect Tanner v.Foley Building Manufacturing Co., 254 Ala. 476, 48 So. 785
(1950). This Court held in these three cases that the materialman's liens in question were enforceable as to the buildings and the land upon which they were situated, but not as to the surrounding one acre.
In response to the defendants' challenges that his description was not sufficient, Bird amended his complaint to the effect that he "did not know or have any reasonable means of knowing the legal description for one acre of land surrounding each one of the three aforesaid buildings." The court below found, after hearing the case without a jury, that
 As described, this additional one acre is specific and definite enough for anyone reading the lien statement to know approximately where it is located and to separate it from the balance of the tract. Also this one acre is described in terms that are as specific and definite as the Plaintiff was reasonably capable of furnishing until after the Court Appointed Surveyor completed his survey on April 21, 1979. From the evidence adduced at the trial of this cause, the Court could equitably fix the exact location of this additional one acre in land area. . . .
Nevertheless, the court felt constrained by the decisions of this Court mentioned above to deny the additional one acre.
We acknowledge that language in the cases above supports the result that the trial court felt was dictated. We also acknowledge the clearly implied conclusion that this result is inequitable. This case highlights the severity of the burden placed upon materialmen by the specificity required by a constrictive reading of Fowler, supra, and the cases following it. In order to acquire the surrounding and contiguous acre granted by §§ 35-11-210 and -217, materialmen would have to survey land owned by someone against whom no legal action was yet pending. Without this acre, comparatively, the materialman's lien on property outside of a city or town is much less valuable, and the description requirements on such materialmen are more onerous than they are on those supplying materials for buildings on city lots.
Bird's lien statement claims the one acre "surrounding and contiguous" to the buildings. In Fowler, the lien claimed a building "and one acre in addition to the land upon which the building or improvement is situated," 233 Ala. at 459,172 So. 266. The materialmen in Tanner and Bice (for aught that appears) failed to specify that they were claiming the acre surrounding and contiguous to the improvement. Bird has given as definite a description as he could have without trespassing on Johnny and Linda's land. To hold that he has no right to the acre claimed would be to preclude the statutory grant from having any effect.
The court-appointed surveyor fixed one additional acre for each of the three buildings. We note from an inspection of the exhibit showing this survey that the acre allotted to the new house extends beyond the parcel mortgaged to First Federal; this acre should be confined to the 3.458 acre *Page 103 
parcel, because the lien on this building affects only the land reserved from the Seiers' mortgage. On remand, this acre should be redrawn within the 3.458 acre parcel.
In summary, we hold that Bird's statement described the additional acre surrounding and contiguous to each building as well as was practicable at the time. On remand, therefore, the court should allot one acre to each of the residential buildings. As discussed under the "Priorities" heading below, Bird's lien does not attach to the land mortgaged to the Seiers; therefore, no lien attaches to the acre surrounding the barn.
4. Power of the court to order a survey.
Linda contends on appeal that the court had no authority to order a survey. On the contrary, two separate chapters of the Code grant such authority.
In Taylor v. Shaw, 256 Ala. 467, 55 So.2d 502 (1951), this Court reversed a decision of the trial court sustaining a demurrer to a mortgagee/materialman's complaint. In that case, there was some question as to whether the building by which the complainant's note was secured had been built beyond the mortgagor's property line. This Court, in remanding the case, said: "Certainly the complainant can request the survey, [Code 1975, § 11-7-11], and the court can direct the survey. [Code 1975, §§ 11-7-4 and -5]." Taylor, supra, 256 Ala. at 472. In contesting Bird's request for a survey before trial, Linda and Johnny argued that §§ 11-7-4 and 11-7-11, gave Bird the right and the duty to survey their land before filing his lien statement. Although § 11-7-11 does give the surveyor the right to enter upon and survey lands "at the request of any person interested therein," we find no record of this section being used except in conjunction with a court proceeding as contemplated in Taylor and in § 11-7-5. Therefore, because of the practical considerations involved in getting a surveyor to go on someone else's land, without a court order, and the shortness of time required to file a materialman's lien under our statute, we do not interpret § 11 7-5 to require a materialman to obtain the services of a surveyor before filing his lien statement.
As further authority for the court's appointment of a surveyor, we note Chapter 3 of Title 35 (Code 1975, §§ 35-3-1
through -3 and §§ 35-3-20 through -25). Bird and the court below, in fact, complied with this chapter: Bird filed a motion which accords with § 35-3-21; the court held a hearing before granting the motion (cf. McCullar v. Conner, 287 Ala. 455,252 So.2d 422 (1971)); and the order directed the surveyor to comply with "the procedure stated in § 35-3-24."
Upon entering judgment in favor of Bird, the court below taxed the costs of the survey against Johnny, apparently on the basis of its finding that the survey "was necessitated by the fact that Johnny . . . did not have a survey of the land involved in this action showing the location of the three buildings in relation to the boundary lines. . . ." We would not go so far as to require a property owner to survey his own land for another's benefit; furthermore, Bird is receiving the benefit of the court ordered survey in that it completes the description required in his lien statement. Therefore, we direct the court on remand to tax the survey costs against Bird.
5. The statute of limitations argument against Roomakers.
The work and materials furnished by Roomakers were provided on February 9, 1978, and the amount owing therefor became due on March 10, 1978. Roomakers filed its lien statement on August 8, 1978, and filed its answer, crossclaim, and counter-claim on September 25, 1978. The counterclaim averred that the amount was "past due and unpaid since July 31, 1978;" the lien statement sought interest from July 31, 1978, but it also stated that "payment therefor was due in full on to-wit: March 10, 1978."
No parties filed responses to Roomakers' cross-claim, but First Federal filed *Page 104 
a motion to alter or amend judgment which raised the statute of limitations. Both First Federal and Linda argue on appeal that their failure to raise this issue as an affirmative defense is excused because the expiration of the period did not appear on the face of the complaint. This alleged excuse does not circumvent waiver, however, for the simple reason that Roomakers' verified statement of lien was attached as an exhibit to the cross-claim. Because the statement did show the due date on its face, reasonable diligence would have led the parties to raise the statute of limitations defense. Therefore, the trial court properly overruled the post-judgment motions raising this issue.
 6. Correctness of trial court's order that title be vested in Johnny based on fraudulent conveyance and constructive trust.
The trial court found that at the time Bird began furnishing materials to this construction project, Johnny was the vendee in an executory contract to purchase the land from the Seiers; that Johnny had paid part of the purchase price; and that he had been put in possession by the Seiers. The court found that this contract vested Johnny with equitable title, constituted him the owner within the purview of the materialmen's lien law, and entitled him to receive conveyance of legal title; but contrary thereto the Seiers purportedly conveyed their title to Linda. The Court said:
 The purported conveyance of the title in and to this real estate to Linda L. O'Grady was part of a fraudulent scheme by Linda L. O'Grady and Johnny W. O'Grady, Jr. for the purpose of defrauding the Plaintiff and other creditors similarily [sic] situated, including the Counter-claimant. All of the $20,000.00 cash consideration for this deed was paid with money belonging to Johnny W. O'Grady, Jr., in which Linda L. O'Grady had no ownership interest, and he arranged for the financing to construct the improvements upon the land covered by this deed and these mortgage loans were made on the basis of his credit and earnings and he was required to join as a mortgagor in each mortgage with his wife Linda L. O'Grady. A constructive trust arose in favor of Johnny W. O'Grady, Jr. and from the date of the aforesaid deed to Linda L. O'Grady, she held legal title for the use and benefit of Johnny W. O'Grady, Jr., as the one equitably entitled thereto. This constructive trust should be declared and enforced and it should now be terminated, thereby constituting Johnny W. O'Grady, Jr. as the sole owner of the real estate involved in this action, subject to the liens in favor of the other parties to this action. . . .
Linda and First Federal argue on appeal that this finding of fraud is erroneous, primarily for lack of evidence of intent to defraud. They assert that at the time of the conveyance, neither materialman's account was overdue. We note, however, that a constructive trust "will be imposed when a property interest has either been acquired by fraud or where, in the absence of fraud, it would be inequitable to allow the property interest to be retained by the person who holds it." Coupounasv. Morad, 380 So.2d 800, 803 (Ala. 1980) (citations omitted). Furthermore, evidence adduced at trial that Johnny had an interest in the property under the contract gave Linda "the initial responsibility of proving the bona fide character of the underlying transaction," Gurley v. Blue Rents, Inc.,383 So.2d 531, 535 (Ala. 1980). This she has not done, at trial or on appeal. We hold, on the basis of the foregoing authorities, and the facts found below, that the trial court did not err in vesting title in Johnny O'Grady.
7. Priorities.
 a. Between Bird and the Seiers
The trial court awarded priority to the Seiers' purchase money mortgage over Bird's lien on the barn and the land on which it is situated, but only to the extent of "the portion of the purchase money mortgage attributable to this .062 acres of land, being the sum of $133.60. . . ." The court then ordered the barn and the land *Page 105 
underneath it sold, with the first $133.60 going to satisfy the Seiers' mortgage on this portion of the plot. This result is contrary to the provisions of Code 1975, § 35-11-211. This section provides that a person holding a materialman's lien subject to a prior mortgage on the land may have the building sold, "and the purchaser may, within a reasonable time thereafter, remove the same." The court properly gave the Seiers priority, because the evidence indicated at most that the barn was begun late on the day the deed and mortgage were executed. This was not sufficient to give the Seiers notice such that they waived their priority or the agreement to build only on the exempted 3.458 acres. See City Realty MortgageCo. v. Tallapoosa Lumber Co., 231 Ala. 238, 164 So. 55 (1935). This case, in addition to discussing priority, indicates that the land might be sold and the proceeds apportioned among the liens and mortgages; however, such a result is not proper under the separability and removal provisions of § 35-11-211. Therefore, the land under the barn (much less an additional acre) cannot be sold because of the Seiers' prior mortgage.
 b. Between Bird and First Federal
On February 9, 1978, Johnny and Linda mortgaged the 3.458 acre plot to First Federal to secure permanent financing of a construction mortgage. The construction had begun some time before, so the trial court properly gave Bird's lien priority.
First Federal argues that it was dealing only with Linda on the mortgage and that, because Linda was sole record titleholder who signed an affidavit that no materialmen's liens were unpaid, First Federal was a bona fide purchaser without notice of Johnny's debts or any fraud. This argument is vitiated, however, by the fact that First Federal's vice president, C. Lanett Davis, testified that Johnny initially contacted him about the loan and continued in communication with him. Furthermore, Johnny signed the loan application as borrower and Linda as co-borrower, and Johnny and Linda both signed the mortgage to First Federal. Under these facts we refrain from disturbing the trial court's award of priority.
 c. As to Roomakers' Lien
The trial court decreed that Roomakers' lien "is superior to and has priority over the . . . mortgage lien in favor of First Federal . . . and all other liens and encumbrances affecting the real estate subject to this lien except the lien of S.M. Bird, Jr. . . . ." This order is not to be taken as giving Bird's lien priority over Roomakers', because Code 1975, §35-11-228, declares that these liens shall stand on an equal footing. The priority over First Federal is correct, because Roomakers' lien attached when it supplied materials and labor on February 9, 1978; First Federal's mortgage from Johnny and Linda was recorded on February 10, 1978.
8. Award of Contract-rate Interest and Attorney's Fees
The court awarded Bird 18% interest and approximately $10,000.00 attorney's fees, both based on Johnny's credit agreement with Bird. First Federal and Linda challenge these awards on appeal, contending that the lien extends only to the cost of the goods plus the legal rate of interest. They rely in part on Security Transactions, Inc. v. Nelson Excavating andPaving Co., Inc., 55 Ala. App. 223, 314 So.2d 297 (1975), cert.denied, 294 Ala. 768, 314 So.2d 304 (1975). That case is readily distinguishable: the Court of Civil Appeals pointed out that there was no evidence of an agreement in the contract (which was oral) to pay attorney's fees. Since Johnny did sign an agreement to pay Bird 18% interest and attorney's fees for collection efforts, we affirm the trial court's award of these elements as part of the amount due on the materials supplied pursuant to the contract.
 CONCLUSION
We affirm the trial court on all issues except that, for the reasons noted above, we reverse as to (1) the denial of the lien on the *Page 106 
acre surrounding the new house and the acre surrounding the concrete block house, (2) the award of survey costs against Johnny, and (3) the award of a lien against the land mortgaged to the Seiers.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and JONES, ALMON and EMBRY, JJ., concur.
APPLICATION FOR REHEARING DENIED; OPINION CORRECTED.
TORBERT, C.J., and JONES, ALMON and EMBRY, JJ., concur.
[1] Johnny is not a party to the appeal. The outcome of his petition in bankruptcy awaits our decision on the title to the property in question.