TORBERT, Chief Justice.
Southern Sash, a corporation engaged in the business of selling building materials, sold and delivered materials to Patton Homes, Inc. for the building of houses on six lots. Patton Homes had earlier obtained construction loans from City National Bank of Birmingham for the purpose of building houses on these same lots. Patton Homes later discontinued construction on these homes, owing the following balances for materials furnished by Southern Sash:
Lot 52, Block 7 $5,881.96
Lot 53, Block 7 427.62
Lot 54, Block 7 1,155.83
Lot 55, Block 7 6,865.73
Lot 5, Block 8 2,951.57
Lot 6, Block 8 3,348.47
Southern Sash brings this action to enforce its materialman’s lien on the above-mentioned lots, and to establish the priority of its liens against the construction loan mortgages of City National. The trial court granted City National’s motion for summary judgment at the close of the plaintiff’s case, and Southern Sash has appealed.
Southern Sash argues that the trial court erred by not allowing into evidence testimony concerning City National’s negligence in making advances to Patton Homes under the construction loans. We disagree with this contention and follow this court’s holding in Empire Home Loans, Inc. v. W. C. Bradley Co., 286 Ala. 449, 241 So.2d 317 (1970).
The Empire Home Loans case dealt with a factual situation similar to the one in the *874 instant case: a holder of a materialman’s lien attempted to establish the priority of his lien over a construction loan mortgage. The court stated that the establishment of priorities concerning materialmen’s liens is governed by statute, and that the apportionment of losses between materialmen and mortgagees “is a matter solely within the province of the legislature.” Id. at 454, 241 So.2d at 322.
The statute which governs the priority of materialmen’s liens is Title 33, section 38 of the Alabama Code (1958):
“Such lien as to the land and buildings or improvements thereon, shall have priority over all other liens, mortgages or incum-brances created subsequent to the commencement of work on the building or improvement; and as to liens, mortgages or incumbrances created prior to the commencement of the work, the lien for such work shall have priority only against the building or improvement, the product of such work which is an entirety, separable from the land, building or improvement subject to the prior lien, mortgage or incumbrance, and which can be removed therefrom without impairing the value or security of any prior lien, mortgage or incumbrance; and the person entitled to such lien may have it enforced by a sale of such buildings or improvement under the provisions of this article and the purchaser may, within a reasonable time thereafter, remove the same.”
Id. (emphasis added). The court in Empire Home Loans, supra, found that through the provision cited above the legislature intended to give precedence to construction loan mortgages recorded prior to the furnishing of materials by the materialmen. 286 Ala. at 453-54, 241 So.2d at 321. To reverse this priority “would impair the value of the mortgages as to monies advanced which exceeded the value of the unimproved lot.” Id. at 454, 241 So.2d at 321.
Applying this rule to the instant case, we find that Southern Sash first supplied materials to Patton Homes on the following dates:
Lot 52, Block 7 8-22-73
Lot 53, Block 7 6-19-73
Lot 54, Block 7 6-26-73
Lot 55, Block 7 7-11-73
Lot 5, Block 8 9-1-73
Lot 6, Block 8 9-18-73
Southern Sash admitted in its complaint that City National held a construction loan mortgage for each of these lots which was executed prior to the time it began furnishing materials for these lots. In fact, the complaint states that, in regard to lots 5 and 6 of Block 8, City National held mortgages which were recorded on July 26,1973. The mortgages for lots 5 and 6 are clearly entitled to priority, and the trial court’s determination in regard to them is hereby affirmed.
However, there is no evidence in the record which indicates that the mortgages on the other lots were recorded prior to the furnishing of materials to those lots by Southern Sash. Such evidence must be adduced before the court can decide which claim must be given priority. Therefore, we reverse the trial court’s granting of summary judgment as it pertained to lots 52, 53, 54 and 55 of Block 7. We remand this case to the trial court for further proceedings consistent with this opinion-
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
A MOTION WAS FILED FOR CLARIFICATION OF OPINION. THE MOTION WAS DENIED.
BLOODWORTH, JONES, ALMON and EMBRY, JJ., concur.