This case involves a dispute as to the priority of respective liens.
In March 1991, Carol Chandler, as president of Lakeside Cove, Inc., began constructing a commercial building in St. Clair County. (Hereinafter Chandler and Lakeside Cove will be referred to collectively as "Chandler.") Chandler obtained financing for the construction from Metro Bank and obtained building materials from Henderson's Building Supply Company, Inc. ("Henderson").[1] On March 22, 1991, Chandler executed a $125,000 mortgage to Metro Bank. On March 25, 1991, Chandler contracted with Henderson to supply materials for the construction of the commercial building. On that same date, Chandler received statutory notice of a lien filed by Henderson, and Chandler acknowledged that Henderson would be supplying materials for the construction of the commercial building and that Henderson claimed a lien on the real property on which the commercial building was situated. On March 26, 1991, Henderson began delivering the materials. On April 2, 1991, Metro Bank recorded the mortgage from Chandler in the probate office of St. Clair County in Pell City. Chandler defaulted on the payment to Henderson for the materials furnished and on the loan to Metro Bank. On July 26, 1991, within six months after furnishing materials and within the statutory period provided by law, Henderson filed a materialman's lien in the amount of $22,742.60 (the total due for materials delivered on March 26, 1991, and subsequently).
On August 2, 1991, Metro Bank sued Chandler on the promissory note. *Page 340 
Henderson moved to consolidate and to intervene in Metro Bank's suit against Chandler, claiming that its materialman's lien was superior to Metro Bank's mortgage lien. On January 21, 1992, the trial court entered a default judgment for Metro Bank and ordered the foreclosure and sale of the property. Henderson moved to set aside the trial court's order and to enjoin the foreclosure sale of the property pending a final determination of priority, because the trial court had entered judgment for Metro Bank without ruling on Henderson's motion to consolidate and intervene. The trial court determined that its order of January 21, 1992, would remain in effect except to the extent that it adjudicated the priority of the lien or liens on the real property owned by Chandler and on which Metro Bank held a mortgage; it granted Henderson's motion to intervene and to consolidate; and by consent of the parties, it enjoined the foreclosure sale of the property. Thereafter, the trial court held that Henderson's materialman's lien was prior to and senior to Metro Bank's mortgage lien to the extent of $17,500. Metro Bank appealed "from the order giving a $17,500 priority of lien on behalf of [Henderson]." We affirm.
 "[A materialman's] lien comes into existence immediately when one provides any materials or performs labor upon the property but remains inchoate unless a statement of lien is timely filed with the judge of probate of the county in which the property is situated (§ 35-11-213), and unless suit is timely filed to perfect the [materialman's] lien (§ 35-11-221). Once these two steps are timely undertaken, the lien relates back to the date that the materials or labor was provided, and the priority of the lien is determined according to § 35-11-211. Such a lien has priority over encumbrances attaching after the commencement of the work."
Greene v. Thompson, 554 So.2d 376, 379 (Ala. 1989). (Citations omitted.) Section 35-11-211, which governs priority between construction mortgages and materialman's liens, reads in part as follows:
 "(a) Such lien as to the land and the buildings or improvements thereon, shall have priority over all other liens, mortgages or incumbrances created subsequent to the commencement of work on the building or improvement. Except to the extent provided in subsection (b) . . ., all liens, mortgages and incumbrances . . . created prior to the commencement of such work shall have priority over all liens for such work. . . ."
The date of the recording of a mortgage and the date of the furnishing of materials by the materialman control in determining the priority between the mortgage and the materialman's lien. Empire Home Loans, Inc. v. W. C. BradleyCo., 286 Ala. 449, 241 So.2d 317 (1970); see, also, SouthernSash of Birmingham, Inc. v. City National Bank of Birmingham,351 So.2d 873 (Ala. 1977).
It is undisputed that Henderson complied with the requirements § 35-11-210 in creating the materialman's lien and that it perfected the lien according to § 35-11-213 and §35-11-221. Because Henderson took these essential steps, its materialman's lien related back to March 26, 1991, when it provided the materials to Chandler. Therefore, Henderson's materialman's lien took priority over Metro Bank's mortgage lien that was recorded on April 2, 1991, which was after the commencement of the work.
Based on the foregoing, the trial court correctly held that Henderson's materialman's lien had priority over Metro Bank's mortgage lien.
We note Henderson's argument that the amount of the judgment entered in its favor should have been $31,239.98, instead of $17,500. Henderson did not challenge the $17,500 amount below, nor did it file a cross appeal. See Rule 4(a)(2), A.R.App.P.;McMillan, Ltd., v. Warrior Drilling Engineering Co.,512 So.2d 14 (Ala. 1986). Therefore, that issue is not properly before us, and we pretermit any further discussion of it.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.
[1] Metro Bank and Henderson are corporations with their principal offices in Pell City, Alabama. *Page 341